[No. 28972-9-III.   Division Three.   February 23, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JENNIFER L. KIRWIN, *Appellant*.

660

*Janet G. Gemberling* (of *Janet Gemberling PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 SIDDOWAY, J. — Jennifer Kirwin appeals her three convictions of first degree custodial interference arising from her six-week, multistate road trip made with her three children in violation of her ex-husband's rights under a parenting plan. She identifies several claimed errors. We find dispositive her argument that the evidence presented at trial was insufficient to support the crimes with which she was charged, and that the State's adequate proof of a different offense mistakenly described in the jury instructions cannot sustain the convictions. We reverse them and remand with directions to dismiss the charges with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Jennifer Lynn Kirwin and Todd Kirwin divorced in 2005. Following the divorce, the couple's three children lived with Ms. Kirwin in Spokane pursuant to a court-ordered parenting plan. Mr. Kirwin received visitation rights. In April 2009, Mr. Kirwin was unable to exercise his rights because he could not contact Ms. Kirwin despite

repeated attempts. He initiated a contempt proceeding in May and a hearing was scheduled for May 26. Ms. Kirwin left the state with the children sometime on or shortly before May 23, after court papers—presumably notice of the contempt proceeding—were served at her home.

¶3 On June 15, the trial court modified the original parenting plan and awarded Mr. Kirwin custody of the children. United States marshals found the children with Ms. Kirwin in California on July 2 and took her into custody. Mr. Kirwin traveled to California and flew back with the children the following day.

¶4 The State charged Ms. Kirwin with three counts of first degree custodial interference. The crime of first degree custodial interference may be committed in three alternative ways: (1) by being a relative of the child and keeping the child from a person who has a lawful right to physical custody; (2) by being a parent and keeping the child from the other parent who has a right to time with the child; or (3) by being a person who, in the absence of a court order, helps one parent to keep the child from the other parent. RCW 9A.40.060(1)-(3). The charging document filed against Ms. Kirwin alleged the first alternative, citing RCW 9A.40.060(1) in the caption and with each count alleging that she "took and conceal[ed]" the children between June 12, 2009 and June 22, 2009 "with the intent to deny access to . . . TODD MICHAEL KIRWIN, a parent having a lawful right to [their] physical custody." Clerk's Papers (CP) at 1-2.

¶5 Before trial, Ms. Kirwin's court-appointed defender was allowed to withdraw after reporting irreconcilable communication and cooperation problems with his client. Ms. Kirwin notified the court that she would like to proceed without the assistance of counsel. In a lengthy colloquy, the trial court tried to persuade Ms. Kirwin not to represent herself. The court advised her of the possibility of prison and the standard sentence ranges of her charges but did not inform her of the maximum statutory sentence. Ms. Kirwin remained steadfast in her desire to represent herself. After

telling Ms. Kirwin that "[t]he bottom line is you're walking into a real hornet's nest, and you need to do this with your eyes open[,] understanding the serious danger you're putting yourself into," the court relented in its attempts to dissuade Ms. Kirwin and allowed her to proceed pro se. Report of Proceedings (RP) (Feb. 22, 2010—Pretrial Motions) at 9.

¶6 The State presented evidence at trial that Ms. Kirwin traveled through Idaho, Montana, Utah, Arizona, and California with her children between late May and early July 2009. It offered the June 15 modified parenting plan into evidence but did not submit the prior parenting plan or present testimony regarding its terms.

¶7 Ms. Kirwin undertook to defend on the basis that she took her children out of the state for their protection because Mr. Kirwin was abusive and had a history of harassment. Although many of the questions she posed to witnesses sought irrelevant information, she attempted to establish the alleged abuse in questioning Mr. Kirwin and her children. The trial court permitted some of these questions, but it sustained objections to most on grounds of hearsay and relevance.

¶8 When it came time to instruct the jury, the to-convict instruction given did not track the offenses charged in the information. While Ms. Kirwin was charged under RCW 9A.40.060(1)(c), the jury was instructed on the elements of RCW 9A.40.060(2)(c), as follows:

> To convict the defendant of the crime of custodial interference in the first degree, each of the following five elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That the defendant was a parent;
>
> (2) That on or about between June 12 and June 22, 2009, the defendant intentionally took, enticed, retained, or concealed her child from the other parent having the lawful right to time with the child pursuant to a court-ordered parenting plan;

    (3)    That the defendant acted with the intent to deny the other parent from access to the child;

    (4)    That the defendant caused the child to be removed from the state of usual residence; and

    (5)    That any of these acts occurred in the State of Washington.

CP at 36 (Instruction 6). The State had never sought to amend the information to charge Ms. Kirwin with violations of RCW 9A.40.060(2)(c).

¶9 The jury found Ms. Kirwin guilty on all three counts. The judgment and sentence reflects that she was convicted under RCW 9A.40.060(1)(c), the offense specified in the charging document. This appeal followed.

¶10 After reviewing the initial briefs and noting the inconsistency between the charging document and the jury instructions, we requested and have considered additional briefing addressing two questions:

    1.    Did the trial court instruct the jury on an uncharged alternative theory of first degree custodial interference?

    2.    Assuming that the court did instruct only on an uncharged alternative, does an appellate court review a sufficiency of the evidence challenge to the charged or uncharged alternative?

## ANALYSIS

¶11 Ms. Kirwin assigns error to the trial court's failure to fully inform her of the consequences of self-representation; in particular, the maximum sentence she faced. She also challenges a series of evidentiary rulings she contends were in error and collectively deprived her of the ability to present her defense. But at oral argument, appellate counsel placed greatest reliance on Ms. Kirwin's challenge to the State's failure to present sufficient evidence of the crimes charged. She asked that we grant the reversal and dismissal that Ms. Kirwin contends is the necessary remedy.

¶12 Ms. Kirwin contends that sufficient evidence does not support the essential element that she knew Mr. Kirwin had a lawful right to physical custody of the children. In *State v. Boss*, 167 Wn.2d 710, 719-20, 223 P.3d 506 (2009), the Washington Supreme Court held:

> Knowledge of the existence of a custody order is inherent in the intentional element of the offense. A person cannot "intentionally" commit first degree custodial interference without being on notice of the underlying order. The State must establish a custody order existed and the defendant intentionally violated the order. The State must establish a defendant is aware of the existence of the order to prove the defendant intentionally violated it.

¶13 The State's position, made explicit at oral argument, is that "lawful right to physical custody" within the meaning of RCW 9A.40.060(1)(d) is sufficiently broad to include rights of visitation that Ms. Kirwin knew Mr. Kirwin enjoyed before she left the state in late May. It argues that it presented evidence that established that Mr. Kirwin had visitation rights before June 12[1] and that Ms. Kirwin knew of them. For her part, Ms. Kirwin argues that "lawful right to physical custody" must refer to the court-designated custodial parent in cases where it is a parent who is being denied custody of the children.

¶14 The criminal code does not define or otherwise clarify the meaning of "lawful right to physical custody." Standing alone, the term is ambiguous. *Black's Law Dictionary* provides multiple definitions for "physical custody," some of which support Ms. Kirwin's position ("[t]he right to have the child live with the person awarded custody by the court") but others of which support the State's ("[p]ossession of a child during visitation"). BLACK'S LAW DICTIONARY 1263 (9th ed. 2009) (definitions 2 and 3). However, the plain meaning of a statute is discerned by examining everything

---

[1] June 12 was the date that the court heard the custody issue and signed the order filed on June 15.

the legislature has said in the statute itself and any related statutes that reveal legislative intent regarding the provision at issue. *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 343, 227 P.3d 1284 (2010). The meaning of words in a statute is not determined from those words alone but from all the terms and provisions of the act as they relate to the subject of the legislation, the nature of the act, the general object to be accomplished, and consequences that would result from construing the particular statute in one way or another. *Id.* at 343-44.

¶15 Reviewing the custodial interference statute as a whole, it is significant that it differentiates between "a lawful right to physical custody" and "authorized visitation" in describing one alternative offense. RCW 9A.40.060(1)(d) provides that a relative commits first degree custodial interference when she or he

> [r]etains, detains, or conceals the child or incompetent person in another state after expiration of any *authorized visitation period* with intent to intimidate or harass a parent, guardian, institution, agency, or other person having *lawful right to physical custody* or to prevent a parent, guardian, institution, agency, or other person with lawful right to physical custody from regaining custody.

(Emphasis added.)

¶16 It is also noteworthy that the legislature used different phrases to describe presumptively different rights protected from interference: in RCW 9A.40.060(1), the right protected from interference is the "lawful right to physical custody," whereas in RCW 9A.40.060(2), the parental right protected is the "lawful right to time with the child pursuant to a court-ordered parenting plan." When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). We also construe statutes so that all the language used is given effect, with no portion rendered meaningless or superfluous. *Johnson v. Recreational Equip., Inc.*, 159 Wn.

App. 939, 946, 247 P.3d 18 (citing *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)), *review denied*, 172 Wn.2d 1007 (2011). Permitting the State to charge a parent under RCW 9A.40.060(1) when the other parent is merely entitled to time with the child, but is not the designated custodian, would render RCW 9A.40.060(2) superfluous. Under that interpretation all conduct violating subsection (2) could be charged under subsection (1).

¶17 Finally, related chapter 26.09 RCW, dealing with dissolution proceedings and legal separation, lends support to Ms. Kirwin's contention that the language refers to the designated custodian of the child. RCW 26.09.285 provides that "a parenting plan shall designate the parent with whom the child is scheduled to reside a majority of the time as the custodian of the child." In *State v. Ohrt*, 71 Wn. App. 721, 726, 862 P.2d 140 (1993), *review denied*, 123 Wn.2d 1029 (1994), the court treated "custodian" as synonymous with the "persons having lawful custody" whose rights are protected under the first section of the custodial interference statute.

¶18 For these several reasons, we conclude that the term "lawful right to physical custody" necessarily refers to the court-designated custodian of a child when a parenting plan has been entered. Thus understood, the evidence below established that Mr. Kirwin did not have a lawful right to physical custody of his three children until entry of the June 15 order.

¶19 The State offered no evidence that Ms. Kirwin knew of the June 15 order at any time during the charging period. The jury was presented with testimony from which it could conclude that before Ms. Kirwin left the State in May a parenting plan must have been in place under which Mr. Kirwin had visitation rights but was not designated the custodian. The only exhibits admitted into evidence were the June 15 order modifying a prior parenting plan, which did not identify the provisions of the prior plan, and the new parenting plan entered while Ms. Kirwin was out of state.

Neither exhibit gave any indication it had been served on Ms. Kirwin or, for that matter, that she had ever received notice that a change of custody was being requested.

¶20 The evidence established only that something—presumably the motion for contempt—was served at Ms. Kirwin's home before she left the state with the children. Mr. Kirwin testified that at the May 26 hearing (which Ms. Kirwin did not attend) the court commissioner indicated he would grant a change in custody if Ms. Kirwin did not respond within 20 days. But the evidence did not establish when any request for a change in custody was made.[2]

¶21 While the evidence presented did not establish Ms. Kirwin's knowledge of the custody decree, it sufficed to establish the elements of the different custodial interference offense on which the jury was mistakenly instructed. The second element from the to-convict instruction given to the jury required that the State prove that "the defendant intentionally took, enticed, retained, or concealed her child *from the other parent having the lawful right to time with the child pursuant to a court-ordered parenting plan.*" CP at 36 (emphasis added). Had the jury been properly instructed on the crime with which Ms. Kirwin was charged, the second element of the to-convict instruction would have required the State to prove beyond a reasonable doubt that during the charging period Ms. Kirwin intentionally "took, enticed, retained, detained, or concealed the child *from a parent having a lawful right to the physical custody of such person.*" *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 39.20 (3d ed. 2008); CP at 1-2 (Information). Ms. Kirwin did not object to the instruction as given.

---

[2] In this connection, we disagree with the dissent's assertion that Ms. Kirwin fled the weekend that "notice of the hearing to change custody was served" and knew that a change of custody was likely. Dissent at 682. The trial record established only that Mr. Kirwin was seeking to hold Ms. Kirwin in contempt for her interference with his visitation rights at the time she left with the children. It provides no information on the content of the papers served. RP (Feb. 22, 2010—Trial) at 8-9, 11; RP (Feb. 23, 2010—Trial) at 68-69, 100-02.

¶22 At the outset, we recognize that there are two well-established challenges Ms. Kirwin could raise in light of these events that could entitle her to a new trial. First, where a to-convict instruction omits an essential element of a charged crime, it is constitutionally defective and the remedy is a new trial unless the State can demonstrate that the omission was harmless beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002); *State v. Cronin*, 142 Wn.2d 568, 580, 14 P.3d 752 (2000). If the State had presented substantial evidence of the charged crime but the jury instructions omitted an essential element, this is the argument we would expect Ms. Kirwin to make. She could be entitled to a new trial even in the face of substantial evidence of her guilt of the crime charged because a properly-instructed jury might nonetheless have found her not guilty.

¶23 Second, when an information alleges only one crime, it is constitutional error to instruct the jury on a different, uncharged crime. *State v. Chino*, 117 Wn. App. 531, 540, 72 P.3d 256 (2003); *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996) (jury erroneously instructed on uncharged statutory alternative means); *State v. Nicholas*, 55 Wn. App. 261, 272-73, 776 P.2d 1385, *review denied*, 113 Wn.2d 1030 (1989); *State v. Mitchell*, 149 Wn. App. 716, 721, 205 P.3d 920 (2009), *aff'd*, 169 Wn.2d 437, 237 P.3d 282 (2010). When the jury is instructed on an uncharged crime, a new trial is appropriate when it is possible that the defendant was mistakenly convicted of an uncharged crime. *State v. Brown*, 45 Wn. App. 571, 576-77, 726 P.2d 60 (1986). Here again, if the State had presented substantial evidence of the charged crime but the jury was instructed on the wrong crime, this is the argument we would expect. Ms. Kirwin would again be entitled to a new trial even in the face of substantial evidence of her guilt of the crime charged because of the possibility that she was convicted only because of the erroneous instruction.

¶24 The crucial distinction here is that the State presented insufficient evidence of the crimes with which Ms.

Kirwin was charged and as to which she was convicted. She has been required to defend one trial in which the State presented insufficient evidence to meet this burden of proof. Ms. Kirwin therefore argues she is entitled to more than a new trial; she is entitled to have the convictions dismissed due to the insufficiency of the evidence. Only evidentiary insufficiency, not deficiencies in the information or instructions, entitles Ms. Kirwin to dismissal. " '[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. . . . Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect.' " *State v. Vangerpen*, 125 Wn.2d 782, 794, 888 P.2d 1177 (1995) (quoting *Burks v. United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)). Double jeopardy bars retrial only when the appellate court reverses the conviction for insufficient evidence, in which case the reversal is deemed an acquittal terminating jeopardy. *State v. Wright*, 131 Wn. App. 474, 478, 127 P.3d 742 (2006), *aff'd*, 165 Wn.2d 783, 203 P.3d 1027 (2009).

¶25 Ms. Kirwin provides us with no authority directly addressing whether she is entitled to dismissal for insufficient evidence where the State presented sufficient evidence of the offense described in the to-convict instruction, to which she made no objection.[3] The issue of whether substantial evidence review is based on the crime as instructed to the jury or the crime as charged in the information—the question we asked the parties to brief supplementally—appears to be one of first impression.

---

[3] A criminal defendant may always challenge for the first time on appeal the sufficiency of the evidence supporting a conviction. *State v. Hickman*, 135 Wn.2d 97, 103 n.3, 954 P.2d 900 (1998) (noting that "[a]ppeal is the first time sufficiency of evidence may realistically be raised"); *State v. Alvarez*, 128 Wn.2d 1, 10, 904 P.2d 754 (1995) (recognizing that the sufficiency of the evidence " 'is a question of constitutional magnitude and can be raised initially on appeal' " (quoting *City of Seattle v. Slack*, 113 Wn.2d 850, 859, 784 P.2d 494 (1989))).

¶26 The State objects to the way we framed the question. It sees no prejudicial discrepancy between the information and the instructions because, it argues, the to-convict instruction merely added an element to those the State was otherwise required to prove, making its burden of proof harder, not easier. But the State addresses only its burden of proving the asserted additional element that Ms. Kirwin intentionally deprived her ex-husband of time with the children pursuant to a court-ordered parenting plan. It ignores the more important fact that the instructions as given relieved the State of the burden of proving that Ms. Kirwin intentionally deprived Mr. Kirwin of custody, a matter it failed to prove.

¶27 The argument for reviewing the sufficiency of evidence with regard to the crime as instructed finds support in cases holding that the instructions to the jury become the law of the case. Where the State makes no objection to an unnecessary element mistakenly included in a to-convict instruction, for instance, it is well-settled Washington law that the State assumes the burden of proving the otherwise unnecessary element as the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). In *Hickman*, the court held that in the event of a sufficiency of evidence challenge on appeal, the sufficiency of evidence to sustain the verdict is determined with reference to the instructions. *Id.* at 103 (quoting *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948)).

¶28 The court qualified its holding in *Hickman* in *State v. Teal*, 152 Wn.2d 333, 337, 96 P.3d 974 (2004). In that case, the defendant's conviction for first degree robbery depended on his accountability for actions of an accomplice, yet the to-convict instruction, to which no party objected, described the elements of the crime only in terms of the defendant's own acts, making no mention of an accomplice. The court in *Teal* explicitly rejected the defendant's argument that the sufficiency of evidence should be measured against the to-convict instruction as given, concluding that

"[t]he Court of Appeals correctly rejected this argument." *Id.* at 338. In what we read as a related observation, the court recognized that a to-convict instruction "must provide a *complete* statement of the elements of the crime charged," *id.* (emphasis added), and distinguished the error in the to-convict instruction in Teal's case because it did not omit an element. In Ms. Kirwin's case, of course, the to-convict instruction did omit an element—an element the State did not prove.

¶29 Ultimately, identifying the proper reference point for sufficiency of evidence review must be guided by the reason for sufficiency of evidence review, which is "to guarantee the fundamental protection of due process of law." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime *with which he is charged.*" *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (emphasis added) (citing U.S. CONST. amend. XIV). Although we have found no published decision directly addressing our issue, the federal cases consistently articulate the substantial evidence standard as focusing on the crime actually charged. *United States v. Williams*, 998 F.2d 258, 262 (5th Cir. 1993) ("If a rational jury could have found the defendant guilty beyond a reasonable doubt *of the essential elements of the crimes charged,* the conviction should be upheld." (emphasis added)), *cert. denied*, 510 U.S. 1099 (1994); *United States v. Inigo*, 925 F.2d 641, 644 (3d Cir. 1991) (holding that the evidence against certain defendants "was insufficient as to the crimes *charged against them in the indictment*" (emphasis added)); *United States v. Douglass*, 780 F.2d 1472, 1476 (9th Cir. 1986) (recognizing the standard to be "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of *each essential element of the crime charged*" (emphasis added)).

¶30 Wash. Const. art. I, § 22 also requires that sufficiency of evidence be tested with respect to the crimes charged. After the State rests its case-in-chief, it cannot amend the information to charge a different or greater crime, or add an essential element of the crime. *Vangerpen*, 125 Wn.2d at 789-91. Why? Because a defendant is entitled to have the sufficiency of the evidence to convict her tested against the original information. Sufficiency of evidence review is a means of guaranteeing due process only if it is with reference to a charge of which the defendant was given notice and the opportunity to defend. Surely the State cannot deprive Ms. Kirwin of that right—and claim the prerogative to try her a second time—by something as simple as submitting or overlooking erroneous jury instructions. And it is no answer that Ms. Kirwin failed to object to the instructions. Where she has defended herself once against the crimes charged, she cannot be deprived of her right to have the sufficiency of evidence tested against the information because she failed to detect and correct errors made by others.

¶31 The dissent would have us simply grant Ms. Kirwin a new trial, to which she is unquestionably entitled if that is what she was seeking, for reasons we have already discussed and on which the dissent expands. But having been through a trial in which she can demonstrate that the State's evidence was insufficient to convict her of the crime charged, she has more to complain about than the instructional error. She makes a cogent argument that she is entitled to more than a new trial. We have addressed the relief she requests.

¶32 The dissent concludes that a defendant is never entitled to a remedy other than a new trial where there has been an improper amendment to a charging document during trial, a context it urges as analogous. We agree that the context is analogous but do not read the cases cited by the dissent—*State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987), *Vangerpen*, 125 Wn.2d 782, and *State v. Markle*, 118

Wn.2d 424, 823 P.2d 1101 (1992)—as foreclosing a challenge to the sufficiency of the evidence, the remedy for which would be reversal and dismissal with prejudice. In *Vangerpen*, it is clear that a sufficiency of evidence challenge would have been futile; the State had ample direct evidence that the defendant had committed the crime charged. In *Pelkey*, the Supreme Court explicitly did not reach a sufficiency of evidence challenge based on the original charge, noting that "[t]he parties do not raise this question in this appeal, and we express no opinion on the merits of the issue." 109 Wn.2d at 486 n.2. While the circumstances of *Markle* would appear to have supported a sufficiency of evidence challenge, none was made. 118 Wn.2d at 441 ("[W]e are reversing Mr. Markle's conviction based upon an improper midtrial amendment to the information. We are not reversing for insufficiency of the evidence."). The parties disputed only the proper remedy for the improper midtrial amendment.

¶33 Unlike the dissent, we are not prepared to assume that a sufficiency of evidence challenge could not be made in a case such as *Markle*. In that case, the State, having rested with what the defendant urged was insufficient evidence of statutory rape, was allowed to amend the charge to indecent liberties. The challenge on appeal was to the improper amendment, so the Supreme Court, in reversing, ordered a new trial.

¶34 If we assume that in *Markle* the evidence was indeed insufficient to sustain conviction for statutory rape and if the dissent is correct in assuming that a challenge to the sufficiency of the evidence to prove statutory rape could not have been made, consider where that leaves the parties: Had the State *not* attempted improper amendment, allowing its evidence to be weighed in light of its original charge, the defendant should have won his motion to dismiss the charge, been acquitted, or succeeded in challenging the sufficiency of evidence on appeal. Prosecution for indecent liberties on the basis of the same conduct would have been

subject to a defense motion to dismiss pursuant to former CrR 4.3(c)(1) (1986), failure to join related offenses. *Pelkey*, 109 Wn.2d at 491.

¶35 On the other hand, if the State had presented its deficient evidence but then requested an improper amendment and succeeded in persuading the court, in error, to allow it, it would, according to the dissent, thereby effectively deprive the defendant his sufficiency of evidence challenge; the defendant would be limited to requesting a new trial. In other words, by compounding the shortcoming of its own evidence with inducement of an error by the court, the State gets a better result and the defendant loses his opportunity for dismissal. We are not persuaded that a Washington appellate court, if one day presented with that question, will reach that result.

¶36 Having concluded that the conviction must be reversed and the charge dismissed, we need not address Ms. Kirwin's remaining assignments of error. We reverse the convictions and remand with directions to dismiss the charges with prejudice.

SWEENEY, J., concurs.

¶37 KORSMO, A.C.J. (dissenting) — This court should focus on the sufficiency of the evidence to support the jury's verdict rather than render an advisory opinion about a theory that the jury did not consider. The instructional theory is the normal focus for an appellate court's sufficiency review of a jury verdict; it also is how we address comparable errors in civil cases. This approach also is consistent with the cases addressing the closely analogous situation of improper amendments to the charging document during trial. For these reasons I dissent from the majority's approach to this case.

¶38 Moreover, there was sufficient evidence adduced to support either theory of custodial interference. This case must

be retried because the jury was instructed on the elements of the wrong offense. Accordingly, I would reverse and remand this case for a new trial with correct instructions.[4]

### Erroneous Elements Instruction

¶39 The majority correctly identifies the problem with the elements instruction in this case. The State charged Ms. Kirwin with violating RCW 9A.40.060(1)(c), which defines "custodial interference" in terms of a relative depriving a guardian of physical custody by taking the children out of state. Clerk's Papers (CP) at 1-2. However, the elements instruction informed the jury that it was to decide if the mother deprived her ex-husband of his visitation time with the children under the parenting plan by taking them out of state, which constitutes a violation of RCW 9A.40.060(2)(c). CP at 36 (Instruction 6).

¶40 The state and federal constitutions require that an accused be informed of the charges he or she must face at trial. CONST. art. I, § 22;[5] U.S. CONST. amend. VI.[6] Because of the centrality of this notice to the ability to defend, it is error to instruct the jury on uncharged offenses or uncharged alternative theories. *E.g., State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942); *State v. Chino*, 117 Wn. App. 531, 540, 72 P.3d 256 (2003). The error can be harmless if other instructions define the crime in a manner that leaves only the charged alternative before the jury. *Severns*, 13 Wn.2d at 549; *Chino*, 117 Wn. App. at 540.

¶41 That is not the circumstance here. The crime of first degree custodial interference was defined for the jury consistent with the elements instruction. CP at 35 (Instruc-

---

[4] I thus do not address whether the defendant's waiver of counsel was valid.

[5] "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him, to have a copy thereof."

[6] "In all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."

tion 5). Thus, Ms. Kirwin was tried on a theory of the case that she was not informed about by the charging document. Since the definitional instruction supported the new theory, the error was not harmless. *Severns*, 13 Wn.2d 542; *Chino*, 117 Wn. App. 531. She is entitled to a new trial.

### *Focus of Sufficiency Review*

¶42 This typical resolution would normally be the end of the discussion. However, instead of seeking a new trial, Ms. Kirwin wants the charges dismissed due to alleged insufficiency of the evidence to support the theory stated in the charging document. She provides no authority in support of her argument, which is a question of first impression. Her theory is not consistent with the reason appellate courts conduct sufficiency review, nor is it consistent with the treatment of this error in untimely amendment cases or in civil cases.

¶43 *Purpose of Review*. The United States Supreme Court first applied the proof beyond a reasonable doubt standard in criminal cases to the states in *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). One of the ensuing questions was the standard to be applied to adjudge state compliance with *Winship*, an issue addressed in *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). There the court determined that federal courts would look to see if the state verdict was supported by evidence sufficient to prove each element of the crime beyond a reasonable doubt. *Id.* at 324.

¶44 Unsurprisingly, the Washington Supreme Court then adopted the same standard for reviewing the sufficiency of the evidence to support a jury verdict in *State v. Green*, 94 Wn.2d 216, 220-222, 616 P.2d 628 (1980). The courts of this state have uniformly applied that standard ever since to review verdicts reached by juries and judges.

¶45 Neither the Washington Supreme Court nor the United States Supreme Court has weighed in on the problem of a variance between the charging document and the

jury instructions in a criminal case. The latter court once dealt with the situation where the defendants had argued on appeal that their conviction under section 2 of an Arkansas statute was invalid because the evidence was insufficient; the Arkansas Supreme Court upheld the convictions because the evidence supported a conviction under section 1 of the statute. *Cole v. Arkansas*, 333 U.S. 196, 197-201, 92 L. Ed. 644, 68 S. Ct. 514 (1948). The United States Supreme Court promptly reversed and remanded, finding that because the defendants had been charged and convicted under section 2 of the statute, they had a due process right to have their challenges to a section 2 conviction heard. *Id.* at 201-202. The court ruled:

> To conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court.

*Id.* at 202.

¶46 One could argue from this quote that the United States Supreme Court would believe that the current issue should be analyzed from the standpoint of what the jury decided rather than what the charging document said. However, *Cole* is easily distinguished for the same reason that the cases cited by the majority are distinguishable—all of the cases involved fact patterns where the defendant was charged and the jury instructed on the same crime. In none of those cases was there a variance between the charged crime and the one in the instructions given the jury. Thus, there is no governing authority on this issue.

¶47 We should begin our review by recalling our function here. In the case of verdicts, as discussed above, an appellate court applies the *Green* standard to see if there was a factual basis for the trier-of-fact's returning the verdict it did. That should be our focus here. Ms. Kirwin presents no reason justifying abandonment of our traditional focus on the jury's verdict, let alone changing that focus to the charging document.

¶48 *Analogous Cases*. There also is persuasive authority suggesting that review of the verdict, not the charge, is the appropriate focus. Like the majority, I find analogous support from the cases involving amendments to the charging document during trial. However, it is the remedy aspect of those cases that points to the correct resolution of this case.

¶49 It is axiomatic that trial courts should not allow amendments to charging documents that state a new crime[7] after the State has rested its case because they limit the defendant's ability to defend against the charge due to lack of notice of what is at issue.[8] *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). When a trial court permits such an amendment after the State has rested, and the jury then returns a verdict on the amended charge, the remedy is a new trial on the amended charge since the defendant would then have sufficient notice to mount a defense. *State v. Vangerpen*, 125 Wn.2d 782, 787-791, 888 P.2d 1177 (1995); *State v. Markle*, 118 Wn.2d 424, 439-441, 823 P.2d 1101 (1992).[9]

¶50 "Jury instructions and charging documents serve different functions." *Vangerpen*, 125 Wn.2d at 788. The charging document is not a concern for the jury. Its primary purpose is to alert the defendant to the charge and underlying conduct at issue. *Pelkey*, 109 Wn.2d at 491. From the jury's perspective, the case is contained in the elements

---

[7] Amendments that merely change the method of committing the offense or add additional counts are permitted at trial. *E.g.*, *State v. Schaffer*, 120 Wn.2d 616, 621-622, 845 P.2d 281 (1993); *State v. Pelkey*, 109 Wn.2d 484, 490-491, 745 P.2d 854 (1987); *State v. Debolt*, 61 Wn. App. 58, 61, 808 P.2d 794 (1991); *State v. Wilson*, 56 Wn. App. 63, 65, 782 P.2d 224 (1989), *review denied*, 114 Wn.2d 1010 (1990); *State v. Mahmood*, 45 Wn. App. 200, 205-206, 724 P.2d 1021, *review denied*, 107 Wn.2d 1002 (1986).

[8] "A criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense. Anything else is a violation of the defendant's article 1, section 22 right to demand the nature and cause of the accusation against him or her." *Pelkey*, 109 Wn.2d at 491.

[9] *Accord State v. Quismundo*, 164 Wn.2d 499, 503-504, 192 P.3d 342 (2008); *State v. Cochrane*, 160 Wn. App. 18, 26, 253 P.3d 95 (2011); *State v. Hull*, 83 Wn. App. 786, 799-802, 924 P.2d 375 (1996), *review denied*, 131 Wn.2d 1016 (1997).

instruction and any accompanying definitional instructions. Thus, when a court instructs the jury on an incorrect theory of the case, it is the functional equivalent of amending the charging document to a new crime and then instructing the jury on that new offense. In each instance, the defendant is facing a jury's verdict on a crime other than the one she had been notified she was facing. In each instance, the error requires a new trial. *Markle*, 118 Wn.2d at 441 (erroneous amendment to new charge); *Severns*, 13 Wn.2d at 552 (erroneous instruction on additional uncharged alternatives).

¶51 Consistent with these cases, our sufficiency review in this case should be focused on the jury's verdict rather than the unconsidered, but charged, theory of liability. That is the same approach taken in civil cases. When a jury is erroneously instructed on the elements of a civil claim, review focuses on whether the evidence supports the jury instruction. *Noland v. Dep't of Labor & Indus.*, 43 Wn.2d 588, 590, 262 P.2d 765 (1953); *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948).[10] This is recognized as an application of the law of the case doctrine. *Noland*, 43 Wn.2d at 590. That doctrine has also long applied in criminal cases. *E.g.*, *State v. Willis*, 153 Wn.2d 366, 374-375, 103 P.3d 1213 (2005); *State v. McGilvery*, 20 Wash. 240, 251, 55 P. 115 (1898). Thus, when the prosecution alleges an extraneous element in a charging document and then undertakes to prove that additional element by including it in the jury instructions, the sufficiency review includes the additional element. *State v. Hickman*, 135 Wn.2d 97, 102-103, 954 P.2d 900 (1998).

¶52 The focus of review in all of these circumstances is on the elements actually considered by the jury instead of what should have been considered. In the current case, this

---

[10] As stated in *Noland*, "[n]o assignments of error being directed to any of the instructions, they became the law of the case on this appeal, and the sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions and rules of law laid down in the charge." 43 Wn.2d at 590.

court likewise should focus on the elements considered by the jury rather than what ought to have been submitted to the jury. These cases are the most analogous to our current fact pattern because the error here was that Ms. Kirwin was not given prior notice of the theory of liability ultimately submitted to the jury. Nothing cited by the majority is nearly as close a fit legally or factually.[11] The difference between civil and criminal charging is the constitutionally mandated notice required in a criminal case. *Pelkey*, 109 Wn.2d at 491. The majority does not explain why the constitutional notice requirement in a criminal case justifies a different focus of review than the well-settled civil standard. There is no connection between notice and evidentiary sufficiency. Here, as in every other case where improper notice was given, the appropriate remedy is a new trial rather than dismissal of charges. *Vangerpen*, 125 Wn.2d at 791.[12]

### Application

¶53 Little need be said about the sufficiency of the evidence presented at trial. Like the majority, I agree there was ample evidence to support the verdict returned by the jury on the uncharged (but instructed upon) theory of

---

[11] I believe the majority's erroneous focus, based on a misreading of the *Vangerpen* line of cases, is best captured by this sentence from the majority's opinion: "Because a defendant is entitled to have the sufficiency of the evidence to convict her tested against the original information." Majority at 673. The problem with the wrongful amendment cases is that the defendant does not receive timely notice of the crime she is facing. *Pelkey*, 109 Wn.2d at 491. If it were a question of measuring the evidence by the charging document, instead of the instructions given the jury, then the remedy could not be a new trial. *See Markle*, 118 Wn.2d at 441.

[12] The majority concludes its opinion with an amusing hypothetical, largely tracking *Quismundo* except for the evidentiary insufficiency challenge, in which a string of errors by the prosecutor and trial judge deprive the defendant of his right to raise a sufficiency of the evidence challenge. There are two simple answers to the hypothetical. First, government mistakes that deprive a defendant of a fair trial are remediable by CrR 8.3(b) and the hypothetical defendant would obtain his dismissal without a new trial. Second, this case is not that hypothetical because if the trial court had granted a motion to amend the theory of kidnapping in this case, it would not have been "wrongful" since amendments to the means of committing a crime are proper even at trial. *See infra* note 8, at 679.

custodial interference by interruption of visitation rights. With respect to the charged (but unconsidered) theory of interference with the father's custody, the failure to serve the defendant with the order changing custody to her former husband should not be dispositive. Ms. Kirwin fled the weekend that the notice of the hearing to change custody was served at her mother's house.[13] When told by her mother that she had 20 days to respond to the June 12 hearing, Ms. Kirwin stated, "No, I don't" and ripped the papers in half. Report of Proceedings (Feb. 23, 2010—Trial) at 69. She then took off with the children in the middle of the night. *Id.* Her willful ignorance of the court's order should not immunize her from violating it. If this theory of the case had been submitted, the jury could have considered her flight as a basis for inferring her knowledge of the change in custody. Accordingly, the evidence was sufficient to support even the hypothetical alternative charge the jury did not consider.

¶54 Ms. Kirwin should be given a new trial due to the instructional error. She is not entitled to dismissal because the evidence did support the jury's actual verdict. I respectfully dissent.

---

[13] While the record could certainly be stronger, the majority merely speculates that the papers served on Ms. Kirwin were for yet another futile contempt hearing. In fact, plaintiff's exhibit 1, the order changing custody to the father, was entered at the hearing on June 12 that Ms. Kirwin had been summoned to attend. Unless the trial court entered the change of custody order without proper service and calendaring, the documents served in late May were for the custody hearing, which is the only matter this record identifies as occurring June 12.