
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | ) ) ) No. 73998-1-I |
| SAMUEL RAYMUNDO, | ) ) ) PUBLISHED OPINION |
| Petitioner. | ) ) FILED: November 13, 2018 ) |

VERELLEN, J. — In this personal restraint petition, Samuel Raymundo seeks resentencing for his vehicular homicide and hit-and-run convictions. For felony hit-and-run, the court calculated Raymundo's offender score at six, including one point each for three prior serious traffic offenses. The court used those same prior offenses for enhancements only to vehicular homicide. Because the offender score statute excludes prior serious traffic offenses from calculation of the offender score for vehicular homicide[1] but not felony hit-and-run, the trial court did not miscalculate Raymundo's offender score for felony hit-and-run.

The trial court ultimately sentenced Raymundo to 174 months total confinement for the felony counts. It appears the court arrived at 174 months by adding the three consecutive 24-month vehicular homicide enhancements, totaling 72 months, to the 102-month sentence for felony hit-and-run. The plain language

---

[1] RCW 9.94A.525(11).

of the vehicular homicide enhancement provision directs that the vehicular homicide enhancement "shall be added *to the standard sentence range for vehicular homicide*," not to any other current offense.[2] As a result, the three prior offense enhancements run consecutive only to the 54-month base sentence for vehicular homicide.

Therefore, we grant Raymundo's petition in part and remand for resentencing consistent with this opinion.

## FACTS

The underlying facts of the case are undisputed. In October 2013, a jury convicted Raymundo of vehicular homicide, felony hit-and-run, and misdemeanor reckless driving. Prior to trial, Raymundo pleaded guilty to third degree driving while license suspended, also a misdemeanor.

On November 1, 2013, the court sentenced Raymundo to 126 months' total confinement for the felony counts plus 454 days for the misdemeanor counts. This included a base sentence of 54 months for vehicular homicide plus the three consecutive 24-month vehicular homicide enhancements. The court ordered the 126 months to run concurrently with the 102 months for felony hit-and-run.

On January 9, 2014, the trial court modified Raymundo's judgment and sentence to 174 months' total confinement plus 454 days.

Raymundo appealed on other grounds, and on April 20, 2015, this court affirmed Raymundo's judgment and sentence.[3] Raymundo filed this personal

---

[2] RCW 9.94A.533(7) (emphasis added).

[3] State v. Raymundo, noted at 187 Wn. App. 1005 (2015).

2

restraint petition on September 30, 2015. On March 15, 2016, this court dismissed his petition. Our Supreme Court granted Raymundo's motion for discretionary review and remanded the petition for reconsideration in light of State v. Conover.[4]

## ANALYSIS

### I. Offender Score

Raymundo contends the trial court misinterpreted the offender score statute when it calculated his offender score for felony hit-and-run.

We review statutory construction de novo.[5] The primary objective is to discern and apply the legislature's intent.[6] "We determine legislative intent from the statute's plain language, 'considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole.'"[7]

"[T]he offender score statute has three steps: (1) identify all prior convictions; (2) eliminate those that wash out; (3) 'count' the prior convictions that remain in order to arrive at an offender score."[8] When calculating an offender score, the trial court uses "all other current and prior convictions as if they were prior convictions."[9]

---

[4] 183 Wn.2d 706, 355 P.3d 1093 (2015).

[5] Id. at 711.

[6] Id.

[7] Id. (quoting Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015)).

[8] State v. Moeurn, 170 Wn.2d 169, 175, 240 P.3d 1158 (2010).

[9] RCW 9.94A.589(1)(a).

RCW 9.94A.525(11) provides:

*If the present conviction is for a felony traffic offense* count two points for each adult or juvenile prior conviction for Vehicular Homicide or Vehicular Assault; for each felony offense count one point for each adult and ½ point for each juvenile prior conviction; *for each serious traffic offense, other than those used for an enhancement pursuant to RCW 46.61.520(2), count one point* for each adult and ½ point for each juvenile prior conviction; count one point for each adult and ½ point for each juvenile prior conviction for operation of a vessel while under the influence of intoxicating liquor or any drug.

Felony hit-and-run is a felony traffic offense.[10] The court calculated Raymundo's offender score for felony hit-and-run at six. The court included one point each for a 2011 prior conviction for driving under the influence (DUI), a 2010 prior conviction for DUI, and a 2009 prior conviction for reckless driving, amended from DUI. The parties do not dispute that these prior offenses fall within the definition of "serious traffic offenses."[11]

For vehicular homicide, the court calculated Raymundo's offender score at two. The court used the three prior serious traffic offense convictions for enhancements to vehicular homicide under RCW 46.61.520(2), not as points for the vehicular homicide offender score.

---

[10] RCW 9.94A.030(26) ("Felony traffic offense" includes vehicular homicide, vehicular assault, eluding a police officer, felony hit-and-run injury-accident, felony driving while under the influence of intoxicating liquor or any drug, or felony physical control of a vehicle while under the influence of intoxicating liquor or any drug.).

[11] See State v. Teitzel, 109 Wn. App. 791, 793, 37 P.3d 1236 (2002) (citing RCW 9.94A.030(35)) ("'Serious traffic offenses' are driving while under the influence of intoxicants (DUI), having actual physical control while under the influence, reckless driving, and hit-and-run of an attended vehicle.").

Raymundo argues the plain language of RCW 9.94A.525(11) precludes the court from including the three prior serious traffic offense convictions in his offender score for felony hit-and-run because the court used the same convictions for enhancements to vehicular homicide. But, when viewed together with the vehicular homicide enhancement provision, RCW 46.61.520(2), and the purpose of the Sentencing Reform Act of 1981 (SRA),[12] the plain meaning of RCW 9.94A.525(11) supports the trial court's offender score calculation.

RCW 9.94A.525(11) provides that when an individual is convicted of a felony traffic offense, each prior serious traffic offense will count as one point. But RCW 9.94.525(11) also carves out an exception to this general rule. It instructs the court to not count prior serious traffic offenses that were used as enhancements "pursuant to RCW 46.61.520(2)." RCW 46.61.520(2) provides that an additional two years "shall" be added to a vehicular homicide sentence "for each prior offense as defined in RCW 46.61.5055."[13]

Pursuant to the plain language of RCW 9.94A.525(11), the court could not use the same prior serious traffic offenses in calculating Raymundo's offender score for vehicular homicide that it used as enhancements under RCW 46.61.520(2). But RCW 9.94.525(11) does not preclude the court from using the prior offenses in calculating Raymundo's offender score for felony hit-and-run because those prior offenses were not used as enhancements to that

---

[12] Ch. 9.94A RCW.

[13] Under former RCW 46.61.5055(14)(a)(i), (v) (2011), the definition of "prior offense" included DUI and reckless driving, "if the conviction is the result of a charge that was originally filed as" DUI.

5

offense. The exclusion of prior offenses used to enhance vehicular homicide applies only to the calculation of the offender score for vehicular homicide, not to the separate calculation of the offender score for other current offenses.

Under the SRA, courts determine the standard sentencing range of a given current offense based on the seriousness of the current offense and the criminal history of the defendant, expressed as an offender score.[14] Two individuals with the same offender score convicted of the same crime are subject to the same standard range.

The SRA contemplates that when a defendant has multiple current offenses, the court will calculate the offender score for each offense one at a time. RCW 9.94A.589(1)(a), concerning consecutive or concurrent sentences, instructs the court that "whenever a person is to be sentenced for two or more current offenses, the sentence range for *each* current offense shall be determined."[15] The Adult Sentencing Guidelines Manual similarly contemplates separately calculating offender scores for each current offense: "For multiple current offenses, separate sentence calculations are necessary for *each* offense because the law requires that each receive a separate sentence."[16] Raymundo's interpretation of

---

[14] RCW 9.94A.510.

[15] (Emphasis added)

[16] STATE OF WASH. SENTENCING GUIDELINE COMM'N, ADULT SENTENCING GUIDELINES MANUAL at I-24 (2011).

6

RCW 9.94A.525(11) requires the court to ignore this fundamental framework for computing offender scores.

One purpose of the SRA is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history."[17] The vehicular homicide enhancement and the exception contained in RCW 9.94.525(11) evidence the legislature's intent to proportionately punish vehicular homicide by imposing a mandatory enhancement for certain prior serious traffic offenses but to not allow those same prior offenses to further increase the sentence via the offender score for vehicular homicide.

But excluding prior serious traffic offenses from the offender score for a nonvehicular homicide felony traffic offense that could never have been enhanced by those same prior offenses leads to a distorted criminal history. And this distorted criminal history would result in the opposite of proportionate punishment based on the seriousness of the offense and the offender's criminal history. For example, if Raymundo had not been convicted of vehicular homicide, his standard range for felony hit-and-run would be 51 to 68 months based on an offender score of four. But under Raymundo's theory, when he has also been convicted of an enhanced vehicular homicide, his standard range for felony hit-and-run would be 46 to 62 months based on an offender score of three.

It would be disproportionate to give a person a longer sentence for a felony hit-and-run offense when that is the only current offense but benefit the same

---

[17] RCW 9.94A.010(1).

7

person with a shorter sentence for felony hit-and-run when that person also committed the current offense of vehicular homicide. And there is no indication the legislature intended for a person convicted of only hit-and-run to receive a longer sentence than a person with the same criminal history convicted of felony hit-and-run who happens to have a current conviction for enhanced vehicular homicide.

Because we focus on the context of the entire SRA and the offender score statute and because that context contemplates separately scoring each current offense, we are not persuaded the legislature intended the current felony hit-and-run offense to be scored in a manner resulting in disproportionate punishment. We conclude the trial court did not miscalculate Raymundo's offender score for felony hit-and-run.

## II. Enhancements

Raymundo argues the court misconstrued RCW 9.94A.533(7) when it imposed 174 months total confinement for the felony counts. Specifically, Raymundo contends the trial court erred in ordering that the three vehicular homicide enhancements run consecutive to his felony hit-and-run sentence.[18]

---

[18] As clarified at oral argument, Raymundo is not challenging the trial court's decision to run the three vehicular homicide enhancements consecutive to each other. But to the extent Raymundo's briefing raises this issue, we reject this argument. RCW 9.94A.533(7) expressly provides that 24 months be added to the standard sentencing range for vehicular homicide "for *each* prior offense." (Emphasis added.) To give effect to the legislature's intent that trial courts impose an additional 24 months *for each prior offense*, these enhancements must run consecutive to each other. Additionally, in 2016, the legislature clarified this intent by adding language explicitly requiring enhancements to "run consecutively to all other sentencing provisions, *including other impaired driving enhancements*." H.B.

As previously discussed, we review questions of statutory interpretation de novo.[19]

Upon a conviction of vehicular homicide, "an additional two years shall be added to the sentence for each prior offense as defined in RCW 46.61.5055."[20] Consistent with the vehicular homicide penalty statute, the SRA provides:

> An additional two years shall be *added to the standard sentence range for vehicular homicide* committed while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502 for each prior offense as defined in RCW 46.61.5055. All enhancements under this subsection shall be mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions.[21]

The plain language of RCW 9.94A.533(7) instructs the trial court that the vehicular homicide enhancement "shall be added *to the standard sentence range for vehicular homicide*," not to any other current offense.

---

2700, sec. 7(7), 64th Leg., Reg. Sess. (Wash. 2016) (emphasis added). House Bill 2700 was introduced five months after our Supreme Court in State v. Conover, 183 Wn.2d 706, 355 P.3d 1093 (2015), found the school bus enhancement provision ambiguous as to whether trial courts must run such enhancements concurrent or consecutive to each other. Because the amendment to RCW 9.94A.533(7) was introduced shortly after Conover, the amendment is properly viewed as an interpretative clarification. Moreover, this conclusion is consistent with the final bill report for House Bill 2700, which provided, "It is *clarified* that that Vehicular Homicide-DUI sentence enhancements are mandatory, must be served in confinement, and they must be served consecutively to the person's standard sentence and any other impaired driving enhancements." FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 2700, 64th Leg., Reg. Sess. (Wash. 2016). Such a clarifying amendment explains the intent behind the statute in effect at the time of Raymundo's offense.

[19] Conover, 183 Wn. App. at 711.

[20] RCW 46.61.520(2).

[21] Former RCW 9.94A.533(7) (2012) (emphasis added).

Here, based on Raymundo's offender score and the seriousness level of the offense, the standard sentence range for vehicular homicide was 41 to 54 months.[22] After adding the 72 months for the three consecutive vehicular homicide enhancements, the standard sentence range was 113 to 126 months. The court sentenced Raymundo at the high end of the range and imposed 54 months. Given this base plus 72 months, the total confinement for vehicular homicide was 126 months. The court ordered the vehicular homicide sentence to run concurrent to the 102 months for felony hit-and-run. As a result, the court should have imposed 126 months total confinement for the two felony counts.

Both the State and the defense advocated for this approach at the November 2013 sentencing hearing. The court expressed some doubt but ultimately followed this approach and imposed 126 months' total confinement plus 454 days. But in January 2014, the court granted the State's motion to modify the judgment and sentence and imposed 174 months' total confinement plus 454 days. It appears the court arrived at the 174 months by adding the three consecutive 24 month enhancements, totaling 72 months, to the 102-month base sentence for felony hit-and-run.

Given the plain language of RCW 9.94A.533(7), we conclude the trial court erred in ordering that the three vehicular homicide enhancements run consecutive to the hit-and-run sentence rather than the vehicular homicide sentence.

The State relies on the clause in RCW 9.94A.533(7) that enhancements under "this subsection . . . shall run consecutively to all other sentencing

---

[22] Ex. A, Pers. Restraint Petition, at 2.

10

provisions" to argue the enhancements must run consecutive to the longest of the current base sentences. But this construction would render the requirement that the trial court add the enhancement to "the standard sentence range for vehicular homicide" meaningless.[23]

Additionally, in Conover, our Supreme Court acknowledged that the legislature intended to address a specific factual situation with the addition of identical language to the school bus stop enhancement provision, that "[a]ll enhancements under this subsection shall run consecutively to all other sentencing provisions."[24] In a prior case, State v. Jacobs,[25] our Supreme Court determined the school bus stop enhancement was ambiguous whether two different sentence enhancements[26] on a single count of unlawful possession of a controlled substance should run consecutive or concurrent to each other.[27]

Conover does not address whether enhancements apply to the longest of the current base sentences. The Supreme Court considered only "whether the school bus stop enhancement statute—RCW 9.94A.533(6)—requires the trial court to run such an enhancement consecutively only to the drug crime sentence it enhances or also requires the trial court to run multiple enhancements on different

---

[23] See State v. Kirwin, 166 Wn. App. 659, 666-67, 271 P.3d 310 (2012).

[24] Conover, 183 Wn.2d at 715.

[25] 154 Wn.2d 596, 115 P.3d 281 (2005).

[26] One 24-month enhancement for committing the crime while a person under 18 was present and one 24-month enhancement for committing the crime within 1,000 feet of a school bus stop. Id. at 601-02.

[27] Id. at 604.

11

consecutive to the base sentence for vehicular homicide or to the longest base sentence for any current offense.

The rationale from <u>Jacobs</u> and <u>In re Post Sentencing Review of Charles</u>,[29] both discussed in <u>Conover</u>, is similarly inapplicable because, in those cases, our Supreme Court again considered whether certain enhancements were required to run consecutive or concurrent to each other, rather than whether a given enhancement must be added consecutive to the base sentence it enhances or to the longest current offense base sentence.[30]

Consistent with the express provision that the vehicular homicide enhancement be added to the standard sentence for vehicular homicide, the trial court should have added Raymundo's three consecutive vehicular homicide enhancements, totaling 72 months, to the base vehicular homicide sentence rather than to the base felony hit-and-run sentence.

To prevail on a personal restraint petition, Raymundo must show either actual and substantial prejudice from constitutional error or nonconstitutional error that "inherently resulted in a complete miscarriage of justice."[31] Our Supreme Court has previously held that "[i]mposition of an unlawful sentence is a

---

[29] 135 Wn.2d 239, 955 P.2d 798 (1998).

[30] <u>Conover</u>, 183 Wn.2d at 713-16.

[31] <u>In re Pers. Restraint of Finstad</u>, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

12

fundamental defect."[32] We conclude the imposition of 174 months rather than 126 months total confinement would constitute a complete miscarriage of justice.[33]

Therefore, we grant Raymundo's petition in part and remand for resentencing consistent with this opinion.

WE CONCUR:

Andrus, J.

Becker, J.

---

[32] In re Pers. Restraint of Carrier, 173 Wn.2d 791, 818, 272 P.3d 209 (2012).

[33] See id. ("[W]e have little trouble concluding that to allow Carrier to remain wrongly subject to a life sentence would constitute a complete miscarriage of justice. Carrier has met his burden of showing prejudice.").