IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32697-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID F. ARCH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — David Arch appeals from his convictions for attempting to elude a police officer and driving with a license suspended in the third degree. We reverse the former conviction and affirm the latter conviction.

## FACTS

On May 30, 2013, Washington State Patrol Trooper Lex Lindquist patrolled Highway 97 near Tonasket. He drove a Chevy Caprice fully marked white state patrol car with a light bar on top and door seals.

After completing a traffic stop, Trooper Lex Lindquist drove southbound on Highway 97. As he drove, Lindquist saw a black Mercedes traveling in the opposite direction at a speed of 80 m.p.h. in a 60 m.p.h. zone. David Arch drove the Mercedes.

Lindquist executed a U-turn and chased the Mercedes, which accelerated beyond 80 m.p.h. Lindquist activated his siren, overhead emergency light bar, and wigwag headlights. The Mercedes accelerated to over 145 m.p.h. and passed several vehicles. Lindquist eventually reached within ten car lengths of the Mercedes and maintained a speed of 137 m.p.h. with the Mercedes for approximately one mile.

Also on May 30, 2013, United States Border Patrol Agent Louis Koler drove a marked Border Patrol truck southbound on Highway 97. As Agent Koler travelled through a bend in the road, he observed the preceding car suddenly brake and swerve to the highway's right shoulder. Koler parroted the action taken by the forward car and avoided a collision with the black Mercedes as it drove northbound in the southbound lane and traveled between 90 and 100 m.p.h. Koler observed that the Mercedes entered the opposing lane in order to maintain control around the corner. Seconds later Agent Koler saw Trooper Lindquist's state patrol car execute the corner with lights blinking and siren blaring. Koler turned around, engaged his truck's emergency lights, and joined the pursuit.

Trooper Lex Lindquist pursued the black Mercedes for twelve miles, after which the Mercedes slowed to between 20 and 25 m.p.h. and the car's driver waved his hand through the car's sunroof. Lindquist disabled his siren and issued commands through his patrol car's loudspeaker to the Mercedes driver. David Arch pointed from the driver's side window to a dirt driveway. Arch turned the Mercedes into the driveway, drove

2

across railroad tracks, and parked his car at his residence along Highway 97.

Trooper Lex Lindquist drew his pistol and ordered David Arch to exit the black Mercedes. Arch complied. Lindquist handcuffed, searched, and read *Miranda* warnings to Arch. Arch told Lindquist that he fled because he did not want his car impounded because Florida and Georgia had suspended his respective state's driver's licenses. Lindquist confirmed the license suspensions with dispatch and transported Arch to jail.

## PROCEDURE

The State of Washington charged David Arch with one count of attempting to elude a pursuing police vehicle and one count of driving while license suspended or revoked (DWLS) in the third degree. By an amended information, the State alleged the second count as follows:

> On or about May 30, 2013, in the County of Okanogan, State of Washington, the above-named Defendant did drive a motor vehicle when his or her driver's license or driving privilege was suspended or revoked solely because the person has committed an offense in another state(s) that, if committed in this state, *would not be grounds for the suspension or revocation* of the person's driver's license; contrary to Revised Code of Washington 46.20.342(1)(c).

Clerk's Papers (CP) at 136 (emphasis added).

The prosecution proceeded to a jury trial. On opening day, David Arch stipulated:

> That on May 30, 2013, my license was suspended in the States of Florida and Georgia due to commission of offenses, that if committed in Washington State, *would be grounds for suspension or revocation* of my Washington State driver's license.

3

Ex. 11 (emphasis added). Note that the stipulation conflicts with the amended charges that allege David Arch committed an offense in another state that, if committed in Washington, would not be grounds for suspension or revocation of a driver's license.

State Trooper Lex Lindquist testified at trial but did not state he wore a uniform at the time he pursued or arrested David Arch. Trooper Lindquist testified that he drove a white state patrol car with a light bar on top and door seals. Lindquist stated that, when he stopped Arch, he holstered his weapon and placed Arch in handcuffs while Arch lay on the ground.

Richard Letteer, a Washington Department of Licensing (DOL) employee, testified that DOL mailed David Arch a letter on July 5, 2012. The letter notified Arch that Washington would cancel his driver's license due to his suspension in another state. DOL cancelled Arch's license on August 20, 2012. At trial, Letteer confirmed, according to a certified copy of Arch's driving record, that Arch's driver's license remained suspended on May 30, 2013. The State did not ask for admission of the certified copy of Arch's driving record as an exhibit.

During trial, David Arch testified that he did not see the state patrol car's emergency lights because of a defective driver side mirror on the black Mercedes. Arch added that he did not hear the patrol car's siren because he loudly listened to a Barry White song on the Mercedes car stereo. Arch stated that he first saw the patrol car when

4

he was one hundred to one hundred and fifty yards from his house.

David Arch and the State of Washington presented each's respective proposed jury instructions to the court. During the instruction conference, the trial court noted that the instructions proposed by both sides incorrectly stated the elements and definition of driving with a suspended license in the third degree:

> [TRIAL COURT]: One thing, Mr. Sloan, that we caught in the elements for driving while suspended third but we didn't catch it in the definition, the word "not" is (inaudible) both of your—
> MR. SLOAN [Prosecution]: Correct. I printed out a new elements—
> MR. BLOUNT [Defense]: Yes.
> THE COURT: Okay—
> MR. SLOAN: —in what I submitted yesterday I had (inaudible) the word—I took the word "not" out.
> It's interesting; I was going back—looking at the statute this morning. The statute actually under third degree has the—the word "not." The elements does—instruction does not. Technically,—it makes it second degree.
> THE COURT: I think you're right.
> MR. SLOAN: So,—argument, we would—we would ask to leave the—the "not" out, because I think it's clear to the jury and it's definitely it's—third degree—likely it's second degree. But it is at a minimum third degree. And I still think it's a correct statement of the law in this case.

Report of Proceedings (RP) at 181-82.

> [TRIAL COURT]: Mr. Blount, your thoughts about that?
> MR. BLOUNT: On the—third degree, I would believe that—the— on the elements that it should—that—"not" should not be there. So I'm in agreement with Mr. Sloan.
> THE COURT: Okay. But isn't it—isn't it—isn't there a conflict if it's included in the definition but not in the elements?
> MR. BLOUNT: Yes. It—it is confusing—

5

No. 32697-7-III
*State v. Arch*

> MR. SLOAN: —propose correcting the definition as well to make it consistent—
> THE COURT: Okay.—
> MR. BLOUNT: Yes. And I agree with that.

RP at 183.

David Arch requested, but did not propose, a jury instruction on the mental state

required for a jury to convict on the charge of attempting to elude a police vehicle:

> MR. BLOUNT: There was one—additional instruction—And it— it's—not an additional instruction; it's also a comment on—the attempting to elude, 94.02.
> There is an additional comment that says an attempt to elude, "attempt to elude" in quotation, requires knowledge that there is a pursuing police vehicle. Defense would say that that would also be another appropriate instruction to give here. There has been testimony as to—the question is when knowledge of a pursuing police vehicle seems to be at issue here, and it seems that that would be an appropriate comment or an appropriate instruction to give the jury, so they can consider when Mr. Arch had knowledge of a pursuing police vehicle.

RP at 186. The State opposed the instruction:

> MR. SLOAN: Your Honor,—we can address that just by subsection (4) of the "to convict" instruction, "the defendant willfully failed or refused." Clearly I think that is—suffices for any argument on mental state. It's not included in the elements. "Willfully" is. Which clearly is not accidental or unintentional; "willfully" is "willful." So as far as the mental state I think that is sufficient—
> THE COURT: —a definition of willful.
> MR. SLOAN: Correct. And they don't suggest giving it in—this— under this charge or this elements instruction. But clearly, "willfully" does connotate—knowledge, at a minimum. If not more.

RP at 188. The trial court sided with the State:

> THE COURT: Okay.

All right. So I think we're pretty much in agreement, then, with what we discussed. Really the only difference is with the defense's just proposed need for an instruction involving a definition of knowledge—Well, for two reasons I'm not going to give a specific instruction on that.

Number one, jury instructions are—are to be designed or fashioned in a way that allows both sides full and fair opportunity to argue their—their version of the case. And -- their theory of the case, whether it's the [S]tate or whether it's the defense. And in my view, as the court intends to give these, without the definition, you have the ability to argue that. Based potentially on what I heard that had been testified to yesterday, and—in terms of when he first became aware of it, he pulled over. And—And—So I think you can argue that theory of the case within the instructions that you—that the court intends to give.

The second reason that I'm not going to give it is because—it's not necessary. And by that, I think the [S]tate properly points out, in the comments section, the willful failure requires that the defendant have knowledge and—and that goes back to the notion that if you're not aware of it how can you be expected to react. And—And that's the whole defense's theory, it seems to me—

. . . .

And—I think the instructions allow you to do that, without throwing in another definition, another requirement—especially when the word "knowledge" is not mentioned anywhere in the statute—specifically in the—in the so-called "to convict" or the elements instruction.

So I'm not going to allow it. The record will reflect that you're proposing it. And of course you'll have an opportunity to except (inaudible).

RP at 189-90.

The trial court later asked the parties to disclose any objections to the final instructions to the jury. Neither side entered an objection. The trial court instructed the jury on the definition and elements of DWLS in the third degree as follows:

A person commits the crime of driving while license suspended or revoked in the third degree when he or she drives a motor vehicle while an order is in effect that suspends or revokes his or her driver's license or

7

driving privileges, in this or any other state, because the person committed an offense in another state that, if committed in this state, *would be grounds* for the suspension or revocation of the person's driver's license.
 . . . .
To convict the defendant of driving while license suspended or revoked in the third degree, each of the following three elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about May 30, 2013, the defendant drove a motor vehicle;
(2) That at the time of driving an order was in effect that suspended or revoked the defendant's driver's license or driving privileges, in this or any other State, because the defendant committed an offense in another state that, if committed in this state, *would be grounds* for the suspension or revocation of the defendant's driver's license; and
(3) That the driving occurred in the County of Okanogan.

CP at 40-41 (emphasis added). Thus, although the State alleged that David Arch's

license "was suspended or revoked solely because the person has committed an offense in

another state(s) that, if committed in this state, *would not be grounds* for the suspension

or revocation," CP at 136 (emphasis added), the trial court instructed the jury to find

whether the offenses committed by Arch in Florida and Georgia "would be grounds for

the suspension" of Arch's license in Washington. CP at 40. The instruction given

conflicts with *11A Washington Practice: Washington Pattern Jury Instructions: Criminal*

93.06, at 315 (3d ed. 2008) (WPIC), but conforms to WPIC 93.07, at 319.

The trial court respectively delivered jury instructions on the definition and

elements of attempting to elude a police vehicle as:

A person commits the crime of attempting to elude a police vehicle when he or she *willfully fails* or refuses to bring his or her vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by

8

a police officer, and while attempting to elude a pursuing police vehicle he or she drives his or her vehicle in a reckless manner. A signal to stop given by a police officer may be by hand, voice, emergency light, or siren.

The police officer giving such a signal must be in uniform and the officer's vehicle must be equipped with lights and siren.

. . . .

To convict the defendant of attempting to elude a police vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about May 30, 2013, the defendant drove a motor vehicle;

(2) That the defendant was signaled to stop by a uniformed police officer by hand, voice, emergency light, or siren;

(3) That the signaling police officer's vehicle was equipped with lights and siren;

(4) That the defendant *willfully failed* or refused to immediately bring the vehicle to a stop after being signaled to stop;

(5) That while attempting to elude a pursuing police vehicle, the defendant drove his or her vehicle in a reckless manner; and

(6) That the acts occurred in the State of Washington.

CP at 35-36 (emphasis added). The trial court did not afford the jury with a definition of "willfully."

The jury found David Arch guilty of both eluding a police officer and DWLS in the third degree. By special verdict, the jury found that Arch's eluding threatened other persons with physical injury or harm. The trial court sentenced David Arch to thirty days' confinement for attempting to elude a police vehicle, an additional twelve months' mandatory confinement for the enhancement, and ninety days' confinement for driving with a suspended license in the third degree.

9

At sentencing, David Arch requested a stay of his sentence pending appeal. The trial court summarily denied Arch's request.

## LAW AND ANALYSIS

David Arch raises six contentions on appeal: (1) his conviction for attempting to elude a police vehicle is not supported by sufficient evidence, (2) his conviction for driving with a license suspended in the third degree is not supported by sufficient evidence, (3) the trial court erred in instructing the jury on an alternate means of committing DWLS in the third degree not charged in the information, (4) the trial court erred in not allowing Arch to give a jury instruction on the requisite mental state for attempting to elude a police vehicle, (5) Arch's defense counsel was ineffective for failing to object to the trial court's instructions to the jury, and (6) Arch's defense counsel was ineffective for failing to request a jury instruction defining "willfully."

We agree that David Arch's conviction for attempting to elude a police vehicle is not supported by sufficient evidence. Therefore, we reverse the conviction with directions to dismiss the charge. Because of our disposition of assignment of error one, we do not address assignments of error four, five, and six. We hold that sufficient evidence supported David Arch's conviction for DWLS in the third degree and the trial court committed no error in jury instructions with regard to this charge. Therefore, we affirm Arch's conviction for DWLS in the third degree.

*Issue 1: Whether sufficient evidence supports David Arch's conviction for*

10

*attempting to elude a police vehicle?*

*Answer 1: No, since the State of Washington presented no evidence that Trooper Lex Lindquist wore a uniform.*

David Arch argues that the State did not provide evidence that Trooper Lex Lindquist was dressed in uniform when Lindquist attempted to stop Arch on Highway 97. Arch maintains that, even though Lindquist drove a marked State Patrol vehicle and Arch knew Lindquist was a law enforcement officer, the State's proof is lacking for a trier of fact to infer beyond a reasonable doubt that Lindquist wore a uniform when he stopped Arch. We agree.

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A defendant challenging the sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *Witherspoon*, 180 Wn.2d at 883.

RCW 46.61.024(1) creates the offense of attempting to elude a police vehicle. The statute reads:

Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal *shall be in uniform* and the vehicle shall be equipped with lights and sirens.

(Emphasis added.)

It is an element of the crime of attempting to elude a pursuing police officer, RCW 46.61.024, that the officer who signals a driver to stop "shall be in uniform." *State v. Hudson*, 85 Wn. App. 401, 403, 932 P.2d 714 (1997); *State v. Fussell*, 84 Wn. App. 126, 127, 925 P.2d 642 (1996). The term "shall" in a statute is mandatory unless contrary legislative intent is apparent. *State v. Hudson*, 85 Wn. App. at 403. Criminal statutes are strictly construed. *Hudson*, 85 Wn. App. at 403.

One might imagine that an officer in a marked patrol car during a pursuit of a speeding trafficker is almost certain to have worn a law enforcement uniform. From this assumption, one might further expect a jury to be free to infer that the officer donned a uniform. After all, the elements of a crime may be proved by circumstantial evidence. *State v. Dugger*, 75 Wn.2d 689, 690, 453 P.2d 655 (1969). The scope of an appellate review of the sufficiency of circumstantial evidence is limited to a determination of whether the state has produced substantial evidence tending to establish circumstances

12

from which the jury could reasonably infer the fact to be proved. *State v. Myers*, 65 Wn.2d 911, 913, 400 P.2d 372 (1965). Twin decisions of this court disagree.

In *State v. Hudson*, 85 Wn. App. 401 (1997) two officers in a marked patrol vehicle noticed Qualagine Hudson change lanes in front of them. After running a check on the license plate, the officers learned that Hudson's car was stolen. The officers activated their emergency lights and siren. Hudson attempted to elude them. He ran three stop signs, traveled along train tracks, and trekked across the front lawn of a residence. Upon exiting the car, one officer yelled "Stop" and the other officer uttered "Police." No trial testimony established whether the officers were in uniform. This court noted that we must view all facts and reasonable inferences in the light most favorable to the State and most strongly against Hudson to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. We held that the officers' being in a marked vehicle and Hudson's probable knowledge that his pursuers were police, without more, was insufficient. We reversed and dismissed the conviction.

In *State v. Fussell*, 84 Wn. App. 126 (1996), we dismissed Stephen Fussell's conviction for attempting to elude a police vehicle. Two officers driving a marked patrol car with emergency lights and sirens attempted to stop Fussell as he drove over 100 m.p.h. Only the officers testified, and neither stated that he wore a uniform at the time of the stop. We held that the evidence was insufficient for a rational trier of fact to find

13

beyond a reasonable doubt that the officers were in uniform when they attempted the stop.

The State argues that this appeal adds facts not found in *Fussell* or *Hudson* to the calculation of whether sufficient evidence supports the conviction. State Trooper Lex Lindquist worked traffic patrol. Trooper Lindquist displayed a gun and handcuffed David Arch. Border Patrol Agent Louis Koler testified that, when he arrived at the stop, he recognized Lindquist as a trooper engaged in a high risk stop. A sheriff deputy later arrived at the scene and readily identified Lindquist as a trooper. At trial, Arch identified those who arrested him as law enforcement officers.

We find no distinguishing important facts in this appeal. The officers in *Fussell* and *Hudson* also rode in marked patrol vehicles. All other facts underscored by the State occurred after the pursuit. Witnesses at the scene of the arrest testified that they identified Lex Lindquist as a law enforcement officer, but no one testified that the identification resulted from a uniform worn by Lindquist. We follow *State v. Fussell* and *State v. Hudson* and reverse David Arch's conviction for attempting to elude a police officer. Reversal for insufficient evidence bars a retrial and commands dismissal of the charge. *State v. Wright*, 131 Wn. App. 474, 478, 127 P.3d 742 (2006), *aff'd*, 165 Wn.2d 783, 203 P.3d 1027 (2009).

*Issue 2: Whether sufficient evidence supports David Arch's conviction for driving with a license suspended in the third degree?*

14

*Answer 2: Yes.*

David Arch contends that a rational trier of fact could not have found him guilty of DWLS in the third degree beyond a reasonable doubt, because the State did not provide evidence of the reason for which his license was suspended in Florida and Georgia. He impliedly argues that, since the State did not present evidence as to the reason for the foreign state suspensions, the jury could not find that the grounds for the suspensions would also be grounds for suspension in Washington State. The trial court instructed the jury that the jury may convict only if Arch committed an offense in Georgia or Florida that, if committed in this state, would be grounds for the suspension or revocation of his driver's license. We disagree, because Arch fails to recognize the efficacy of his stipulation.

RCW 46.20.342 provides, in relevant part:

> (1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is *suspended or revoked in this or any other state.*
> . . . .
> (c) A person who violates this section when his or her driver's license or driving privilege is, at the time of the violation, suspended or revoked solely because . . . (v) the person has committed an offense in another state that, if committed in this state, *would not be grounds* for the suspension or revocation of the person's driver's license . . . or any combination of (c)(i) through (vii) of this subsection, is guilty of driving while license suspended or revoked in the third degree, a misdemeanor.

(Emphasis added.) The jury instruction and David Arch's stipulation use the phrase "would be grounds," while the statute and charging documents use the phrase "would not

15

be grounds." As a preliminary matter, then, this court must decide whether to review the sufficiency of the evidence of the crime with which Arch was charged, or the crime as set forth in the to-convict instruction.

Jury instructions not objected to at trial become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998); *State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968). Nevertheless, if a jury instruction omits an essential element of the charged crime, appellate courts may consider the issue for the first time on appeal, as such omission constitutes a manifest error affecting a constitutional right under RAP 2.5(a)(3). *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003). When an information alleges only one crime, it is constitutional error to instruct the jury on a different, uncharged crime. *State v. Kirwin*, 166 Wn. App. 659, 669, 271 P.3d 310 (2012). A new trial is appropriate if it appears that the jury mistakenly convicted the defendant of an uncharged crime. *Kirwin*, 166 Wn. App. at 669. However, the error may be harmless if other instructions clearly and specifically define the charged crime. *Chino*, 117 Wn. App. at 540.

In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction. *State v. Hickman*, 135 Wn.2d at 102. On appeal, a defendant can challenge the sufficiency of the added element. *Hickman*, 135 Wn.2d at 103. Thus, in a sufficiency of the evidence challenge, an appellate court should typically review the final

to-convict instructions to determine whether a rational trier of fact could have found each element of the crime.

In *State v. Kirwin*, 166 Wn. App. 659 (2012), this court followed a different approach. In *Kirwin*, the State charged Jennifer Lynn Kirwin with first-degree custodial interference and alleged that she took and concealed her children from their father, her ex-husband, with the intent to deny access to a parent having a lawful right to physical custody. The trial court, however, instructed the jury on the elements of a different section of the statute, that being whether Kirwin took her children "from the other parent having the lawful right to time with the child pursuant to a court-ordered parenting plan." *Kirwin*, 166 Wn. App. at 663. On appeal, Kirwin contended that the State had failed to present sufficient evidence to support a conviction on the crime as originally charged. The panel agreed that the inconsistency between the charging documents and the jury instructions deprived Kirwin of due process. However, the panel disagreed on the proper remedy for the error. The majority held that it should address Kirwin's challenge to the sufficiency of the evidence to support the crime described in the charging document. Finding the evidence inadequate, this court reversed and dismissed Kirwin's conviction. *Kirwin*, 166 Wn.2d at 675. The dissenting judge wrote that the erroneous jury instruction warranted a new trial, but not outright dismissal. Moreover, the dissenting judge penned that the law of the case doctrine limited the scope of review of Kirwin's sufficiency of the

17

evidence challenge to the jury instructions and not the charging document. *Kirwin*, 166 Wn. App. at 677-78 (Korsmo, J., dissenting).

Here, as in *Kirwin*, David Arch assigns error to the sufficiency of the evidence to support a conviction based on the crime described in the information. He maintains that the State failed to provide evidence that his suspensions in Florida and Georgia were the result of offenses that, if committed in Washington, would *not* warrant suspension in this state. Importantly, however, and unlike in *Kirwin*, Arch stipulated that those offenses *would* warrant suspension in Washington. When the parties stipulate to the facts that establish an element of the charged crime, the jury need not find the existence of that element, and the stipulation therefore constitutes a waiver of the right to a jury trial on that element as well as the right to require the State prove that element beyond a reasonable doubt. *State v. Humphries*, 181 Wn.2d 708, 714-15, 336 P.3d 1121 (2014). Because of this distinction, the proper scope of this court's review is the crime as described in the jury instructions and not the charging document. Moreover, as a general rule, it makes more sense to review the sufficiency of the evidence of a crime *as instructed* rather than *as charged*. Limiting review to the crime as charged could give the State an unfair advantage on appeal as it would eliminate the requirement that the State prove additional elements not previously charged beyond a reasonable doubt.

Having determined that the proper scope of review is the to-convict instruction on driving with license suspended in the third degree, we find sufficient evidence supports

the conviction. David Arch clearly and voluntarily stipulated that he committed offenses in Florida and Georgia that "if committed in Washington State, would be grounds for suspension or revocation of my Washington State driver's license." Ex. 11. Although the State did not amend the information prior to resting its case, Arch's stipulation and explicit agreement with the omission of the word "not" from the jury instruction amounted to a waiver of Arch's right to a jury trial on that element. *See Humphries*, 181 Wn.2d at 714-15. We affirm Arch's conviction for DWLS in the third degree.

*Issue 3: Whether the trial court erred in instructing the jury on an alternate means of committing DWLS in the third degree not charged in the information?*

*Answer 3: No.*

As explained above, a defendant convicted of a crime not charged in the original information is typically entitled to a new trial. *State v. Kirwin*, 166 Wn. App. at 669 (2012). Nevertheless, David Arch had notice of the State's intention to prosecute him for DWLS in the third degree under a different theory, as evidenced by his stipulation. Thus, we may affirm the charge of which Arch had notice and of which the jury found him guilty.

*David Arch's Statement of Additional Grounds for Review*

David Arch raises two additional grounds for this court's review: (1) Arch contends he was not permitted to hire private counsel, and (2) Arch's attorney did not

19

inform him of the effect of signing a speedy trial waiver. Arch did not raise either of these issues below.

A criminal defendant can submit a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel. RAP 10.10(a). The rule additionally provides in part:

> Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors. Except as required in cases in which counsel files a motion to withdraw as set forth in rule 18.3(a)(2), the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review.

RAP 10.10(c); *see also State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This court does not consider arguments that are repetitive of briefing. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013), *remanded on other grounds*, 183 Wn.2d 1013, 353 P.3d 640 (2015).

Although David Arch names witnesses to support his claim that he was not allowed to hire private counsel, Arch can point to no evidence in the record to support this contention, nor his additional contention. Arch's contentions may have merit, but given their reliance on matters outside the record, they cannot be raised on direct appeal, and are more suited to a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995); *State v. Kinzle*, 181 Wn. App. 774, 786, 326 P.3d 870,

*review denied*, 337 P.3d 325 (2014). Therefore, we do not address Arch's additional grounds for review.

CONCLUSION

We reverse and order the dismissal of David Arch's conviction for attempting to elude a police officer. We affirm Arch's conviction for driving with a license suspended in the third degree. We remand to the trial court to resentence Arch consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

I CONCUR:

Korsmo, J.

No. 32697-7-III

SIDDOWAY, C.J. (concurring) — The majority characterizes this court in *State v. Kirwin*, 166 Wn. App. 659, 271 P.3d 310 (2012) as eschewing an analysis under which the sufficiency of evidence is tested against the court's instructions (as one would do if a criminal defendant argued that the instructions were law of the case) and of "follow[ing] a different approach." Opinion at 17. But what we did in *Kirwin* was respect an appellant's right to be the master of her own challenges on appeal. Ms. Kirwin could have raised two challenges based on the instructions given in her case and obtained a new trial. [1] Instead, she wished to challenge the sufficiency of the evidence to prove the crime with which she was charged, and thereby obtain dismissal. We respected her right to choose her own assignments of error and arguments on appeal. I would do so in this case as well.

There is an important distinction between this case and *Kirwin*, however. In *Kirwin*, the record did not reveal that Ms. Kirwin contributed to the error in the

---

[1] In *Kirwin*, we observed:

> At the outset, we recognize that there are two well-established challenges Ms. Kirwin could raise in light of these events that could entitle her to a new trial.
>
> . . . .
>
> . . . Ms. Kirwin [] argues she is entitled to more than a new trial; she is entitled to have the convictions dismissed due to the insufficiency of the evidence.

166 Wn. App. at 669-70.

instructions, and we held that "[w]here she has defended herself once against the crimes charged, she cannot be deprived of her right to have the sufficiency of evidence tested against the information because she failed to detect and correct errors made by others." *Id.* at 673. Since Ms. Kirwin at most failed to object to the instructions, she could not be subjected to a second trial where the State's evidence was insufficient to prove the charges in an information that it never sought to amend.[2]

Here, by contrast, Mr. Arch entered into a stipulation establishing the element that he now contends varied from the crime as charged. Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). The doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). Mr. Arch's participation in stipulating that his license had been suspended elsewhere for crimes that, if committed in Washington State "would be grounds" for suspending or revoking his Washington driver's license, would understandably deflect

---

[2] The majority's concern that "[l]imiting review to the crime as charged could give the State an unfair advantage on appeal as it would eliminate the requirement that the State prove additional elements not previously charged beyond a reasonable doubt" is misplaced. Opinion at 18. *Kirwin* teaches that where the State charges one crime but offers instructions on another, more than one type of error can be assigned. The insufficiency of the evidence to prove the crime on which the jury was instructed is one. Its insufficiency to prove the crime charged, assuming the instructions were not invited error, is another.

the court's and the State's attention from whether that element was consistent with the crime as charged. Opinion at 3.

The invited error doctrine precludes a criminal defendant from seeking appellate review of an error he helped create, even when the alleged error involves constitutional rights. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999). Because any insufficiency in the evidence to prove the crime as charged was the result of invited error, I concur in the result.

Siddoway, C.J.