IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33136-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CALEB E. LOUTZENHISER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Caleb Loutzenhiser appeals convictions arising from his flight in a stolen vehicle from a pursuing police officer. He also challenges provisions of his sentence. We reverse his conviction for failure to remain at the scene of an accident with an unattended vehicle. We affirm other convictions and affirm his sentence for the other convictions.

## FACTS

On February 4, 2014, Spokane Police Officers Dustin Howe and Sergeant Kurt Vigesaa spotted a Mazda3 sedan, recently reported stolen, traveling in north Spokane. The officers, each driving an unmarked vehicle, trailed the Mazda3 while waiting for other officers to arrive for assistance. The Mazda3 negotiated several "turns and twists," but eventually Officer Howe's car and the Mazda3 met at an intersection. Verbatim

Report of Proceedings (VRP) (Oct. 20, 2014) at 29. Howe maneuvered his vehicle to within six inches of the Mazda3's front bumper, exited his vehicle, and approached the driver. Howe repeatedly yelled: "Police, get out of the car." VRP (Oct. 20, 2014) at 31. Officer Howe wore a tactical vest that read "police," and he wore a law enforcement badge.

The driver of the Mazda3, appellant Caleb Loutzenhiser, met Officer Dustin Howe's gaze, thumped the Mazda's accelerator, and rammed the police car. Due to icy road conditions, the Mazda3 slid sideways into the police car. The Mazda approached within six to eight inches of clipping Officer Howe or pinching him between the two cars. Loutzenhiser sped away. Loutzenhiser unsurprisingly did not leave contact information with Officer Howe before departing.

Officer Howe returned to his vehicle and chased Loutzenhiser. The pursuit shortly ended when the Mazda3 slid into rocks and a fence. Howe also lost control of his car, and the car slammed into the same rocks and fence. Howe could not extricate his vehicle. Loutzenhiser liberated his car from the fence's grasp and once again sped away. Loutzenhiser unsurprisingly did not leave contact information with Officer Howe or owners of the fence before departing.

Officer Dustin Howe pursued Caleb Loutzenhiser on foot but readily lost sight of him. Sergeant Kurt Vigesaa thereafter found, in the front yard of another nearby home, an abandoned Mazda3 with its doors open and engine running. Loutzenhiser

unsurprisingly did not leave contact information with the home owners before departing. Vigesaa noticed footprints in snow leading from the Mazda3. Officers later arrested Loutzenhiser at a nearby convenience store.

## PROCEDURE

The State of Washington charged Caleb Loutzenhiser with (1) second degree assault upon Officer Dustin Howe with a deadly weapon, the Mazda3, (2) possession of a stolen motor vehicle, the Mazda3, (3) first degree malicious mischief for damage to the Mazda3, (4) second degree malicious mischief for interruption and impairment of public property, the car operated by Officer Howe, (5) failure to remain at the scene of an accident with an attended vehicle or other property, and (6) failure to remain at the scene of an accident with an unattended vehicle. Note that count five involves an attended vehicle and count six an <u>un</u>attended vehicle. Both counts of failure to remain at the scene constitute misdemeanors. The State alleged in count six:

> That the defendant, CALEB E. LOUTZENHISER, in the State of Washington, on or about February 04, 2014, did drive a vehicle which *collided with another unattended vehicle*, and knowing that s/he had been involved in such collision, did fail to stop immediately and locate the operator or owner of such vehicle and notify that person of the name and address of the operator and owner of the vehicle striking the unattended vehicle and did fail to leave in a conspicuous place in the vehicle struck a written notice, giving the operator's and owner's name and address of the vehicle striking such other vehicle.

Clerk's Papers (CP) at 42 (emphasis added).

The case proceeded to a jury trial. Sergeant Vigesaa testified on behalf of the

3

No. 33136-9-III
*State v. Loutzenhiser*

State. At the beginning of his direct examination, Vigesaa explained his role within the

Spokane Police Department:

> Q  What are your duties at this point in time?
> A  I'm a sergeant of the patrol anticrime team.
> Q  Is that what is commonly known as the PACT team?
> A  Correct.
> Q  What are the duties of the PACT team?
> A  We identify and build cases on the worst, most prolific Spokane criminals, usually specifically property crimes, burglars, stolen vehicles, et cetera.
> Q  Were those your duties on or about February 4th of this year?
> A  Yes.
> Q  Now on February 4th of this year at approximately 2:00 in the afternoon, were you working in that capacity?
> A  Yes.
> Q  And did you have at that point in time cause to come into contact with anyone in the courtroom today?
> A  The investigation led to the defendant, correct.

VRP (Oct. 20, 2014) at 53-54. Caleb Loutzenhiser did not object to this testimony.

Jarrod Meade, the owner of the Mazda3, testified that his car needed $6,500 in repairs in

order for it to operate again.

The trial court did not render a jury instruction for hit and run of an unattended

vehicle in violation of RCW 46.52.010(1), as charged in count six of the information.

Rather, the court gave an instruction based on RCW 46.52.010(2), which criminalizes

failure to remain at the scene of an accident involving property. The instruction read:

> A person commits the crime of hit and run when he or she is the driver of a vehicle and knowingly collides with property fixed, placed upon, adjacent to any public highway and he or she fails to take reasonable steps to locate and notify the owner or person in charge of such property of such fact and give that person his or her name and address and the name

4

No. 33136-9-III
*State v. Loutzenhiser*

and address of the owner of the vehicle he or she was operating or leave in a conspicuous place upon the property struck a written notice giving his or her name and address and the name and address of the owner of the vehicle he or she was operating.

CP at 145; 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:

CRIMINAL 97.07, at 375 (3d ed. 2008) (WPIC).

The trial court instructed the jury on the requisite elements of second degree

assault:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 4th day February, the defendant:
> (a) assaulted Officer Dustin Howe with a deadly weapon; and
> (2) That this act occurred in the State of Washington.

CP at 96; *accord* 11 WPIC 35.12. The trial court defined "assault" in jury instruction

number 9:

> An assault is an act, with unlawful force, *done with intent to inflict bodily injury upon another*, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
> An assault is an act, with unlawful force, *done with the intent to create in another apprehension and fear of bodily injury*, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 94 (emphasis added); *accord* WPIC 35.50.

In closing argument, defense counsel posited a drug dealer defense and asserted

that Caleb Loutzenhiser fled for his safety and not because he sought to elude law

enforcement:

5

What I would say after hearing everything, what I believe to suggest is Mr. Loutzenhiser was afraid for his life. He's driving a car that he did not know anything was wrong with when he's driving it and a car pulls in front of him. We heard from Officer Howe that the car he was in has no markings, no lights, no sirens. It's specifically used so you don't know it's law enforcement.

This car all of a sudden pulls right in front of Mr. Loutzenhiser, blocks him in. A gentleman carrying a firearm gets out of that car. He may or may not have been wearing a black beanie cap that had no markings on it. Mr. Gagnon leads you to believe that the only explanation there is that Mr. Loutzenhiser knew this was law enforcement.

. . . .

I would suggest to you when you're in the life that Mr. Loutzenhiser and Mr. West and Josh are in, sometimes when you're dealing with drugs people come out brandishing firearms. You read about it all the time.

Mr. Loutzenhiser took off afraid, crashed, took off out of there on foot.

VRP (Oct. 21, 2014) at 153-54.

During deliberations, the jury submitted several questions to the court, two of which concerned jury instruction 9. The first question read: "On Instruction #9-need clarification. How do we decide intent?" The second question asked: "Last line of 2nd paragraph of instruction 9 is being interpreted by some jurors to mean that it is assault whether defendant intended to cause bodily injury or not-is this correct?" CP at 166, 168. To the first inquiry the trial court replied with the standard, "Please refer to instruction #6 which defines intent." CP at 166. The trial court wished a more specific answer to the second question in order to preclude additional questions from the jury, and the court spoke to counsel. The trial court proposed an additional instruction that the defendant did not need to intend bodily injury. The defense objected to the added jury instruction,

6

No. 33136-9-III
*State v. Loutzenhiser*

although defense counsel agreed a conviction did not require intent to cause bodily injury. Counsel expressed concern about the jury confusing the two paragraphs in jury instruction 9.

After discussions with counsel, the trial court instructed the jury:

> It is not necessary for the actor (defendant) to actually intend to cause bodily injury.

CP at 168. We later focus on the trial court referencing the actor as "defendant."

The jury convicted Caleb Loutzenhiser as charged. The verdict form for count six, failure to remain at the scene of an accident with an unattended vehicle, read:

> We, the jury, find the defendant, CALEB E. LOUTZENHISER, guilty of the crime of FAILURE TO REMAIN AT THE SCENE OF AN ACCIDENT—UNATTENDED VEHICLE *as charged in Count VI*.

CP at 118 (emphasis added).

The trial court entered separate judgment and sentences for the felony convictions and misdemeanors. Based on a finding that some crimes would go unpunished with a standard range sentence and the aggravating factor of assault against a law enforcement officer, the court, in the felony judgment, imposed an exceptional sentence of one hundred twenty months on counts one, two, and three, and sixty months on count four, all to run concurrently. In the misdemeanor judgment, the court imposed three hundred fifty days for count five and ninety days on count six also to run concurrently with the felony convictions. During sentencing, the court stated:

> It's clear to me that you have a long term issue with substance abuse,

7

and that's probably why you're committing the majority of these crimes and you're on this spin that never seems to end. I wish I had options other than sending you to prison, but sometimes it seems like there's nothing else I can do.

. . . .

And regrettably, sir, unless you find your own way to walk away from substance abuse—and people do do it, by the way. It's tough. It's a challenge, but people do it. Unless you figure out how to do it on your own, when you're released from prison on these particular counts, we're going to see you again because you'll go right back to the substance abuse. So keep that in mind, sir. You're still young enough that there's time left.

VRP (Jan. 20, 2015) at 19-20.

The trial court imposed eighteen months of community custody on Caleb Loutzenhiser with a condition prohibiting use or possession of marijuana or products containing tetrahydrocannabinol (THC). The judgment and sentence also barred consumption and possession of controlled substances except pursuant to lawfully issued prescriptions. The trial court imposed $800.00 in mandatory legal financial obligations and restitution of $16,480.91, with a payment schedule of $25.00 per month. The judgment and sentence included a boilerplate finding that the court considered Loutzenhiser's ability to pay financial obligations. At sentencing, the court stated:

There's some costs that I can't waive, Mr. Loutzenhiser. If I could, I would, because I'd rather that the only thing you had to address is restitution, but I'll impose $500 victim impact fee, which has to be ordered in every case, $200 court costs, and $100 for DNA. So that would be in addition to the $16,480.91 in restitution. I'll start payments, sir, at the lowest amount that I can, which would be I think probably $25 a month is as low as I can go. Even though you're incarcerated, I'm going to start your payments April of 2015. There's statutory interest on this, and you might as well get going on it.

8

No. 33136-9-III
*State v. Loutzenhiser*

VRP (Jan. 20, 2015) at 20-21.

When imposing restitution, the trial court adopted a schedule of damages submitted by the State before the sentencing hearing. Defense counsel signed the schedule under the phrase "approved for entry." CP at 266. The restitution order awarded USAA Insurance $8,967.58 and the city of Spokane $7,013.33. The State did not submit any receipts to support the awarded amounts, nor did anyone from the insurance company or Spokane testify at the sentencing hearing.

The clerk of the court created a certificate for the court administrator that incorrectly lists Caleb Loutzenhiser's sentence on count six as ninety months, rather than ninety days. In the misdemeanor judgment and sentence, the trial court did not specify that the sentences for the misdemeanors in counts five and six run concurrent with the felony convictions.

## LAW AND ANALYSIS

On appeal, Caleb Loutzenhiser asserts seven assignments of error. First, sufficient evidence does not support the conviction for failure to remain at the scene of an accident with an unattended vehicle. Second, defense counsel was ineffective when failing to object to Sergeant Vigesaa's testimony that he worked on a team dedicated to apprehending "the worst, most prolific Spokane criminals." Third, the trial court erred in its response to the jury's question during deliberations. Fourth, insufficient evidence supports the award of restitution. Fifth, the trial court erred when failing to inquire as to

9

his ability to pay legal financial obligations. Sixth, the trial court erred when imposing a community custody condition prohibiting use or possession of marijuana and THC products since the condition is not crime related. Seventh, the misdemeanor judgment and sentence, and related clerical documents, contain scrivener's errors that merit correction. We reverse and dismiss the conviction for failure to remain at the scene of an accident with an unattended vehicle, affirm all other convictions, and remand for correction of the misdemeanor judgment and sentence.

*Issue 1: Whether Caleb Loutzenhiser's conviction for failure to remain at the scene of an accident with an unattended vehicle is supported by sufficient evidence?*

*Answer 1: No.*

Caleb Loutzenhiser contends, and the State concedes, that insufficient evidence supports the conviction for "hit-and-run" of an unattended vehicle. We agree. We reverse the conviction and dismiss the charge for this count.

Due process requires the State to prove, beyond a reasonable doubt, every element of the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient to support a conviction if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). When an information alleges only one crime, it is constitutional error to instruct the jury on a different, uncharged

10

crime. *State v. Kirwin*, 166 Wn. App. 659, 669, 271 P.3d 310 (2012). At minimum, this error bestows a new trial on the defendant who seeks one. *Kirwin*, 166 Wn. App. at 669. Nevertheless, due process requires this court to reverse and dismiss a conviction when the State failed to prove beyond a reasonable doubt the crime as charged in the information. *Kirwin*, 166 Wn. App. at 673.

The parties and the jury were confused about the difference between leaving the scene of the crime with an unattended vehicle present and leaving the scene of a crime after damaging property. The State submitted evidence that Caleb Loutzenhiser struck rocks, damaged a fence, and drove onto a homeowner's front lawn without leaving personal information with the owners of the property. Nevertheless, the State did not charge Loutzenhiser with damaging the fence or lawn. The State alleged that Loutzenhiser left the scene with an unattended vehicle. Loutzenhiser's first collision involved an attended vehicle. His second collision entailed no other vehicle.

*Issue 2: Whether defense counsel was ineffective for failing to object when a police officer testified he was assigned to a unit that builds cases on the worst, most prolific Spokane criminals?*

*Answer 2: No.*

Caleb Loutzenhiser next contends that he received ineffective assistance of counsel and is entitled to a new trial on all counts. He argues that his attorney should have objected to Sergeant Kurt Vigesaa's testimony, excerpted above, as irrelevant and

11

unduly prejudicial opinion testimony. Loutzenhiser maintains that Vigesaa's description

of the task force, of which he was a member, improperly suggested to the jury that

Loutzenhiser was one of Spokane's worst, most prolific criminal. He further argues that

this testimony made it more likely that the jury would return a guilty verdict on all counts

because a police officer's opinion "carries a special aura of reliability with the jury." Br.

of Appellant at 30.

The State maintains that Vigesaa did not provide improper opinion testimony and

even if he did, Loutzenhiser's counsel had a strategic purpose for not objecting insofar as

doing so could have drawn unnecessary attention to his client's criminal history. We

hold that Loutzenhiser did not receive ineffective assistance of counsel.

A claim of ineffective assistance of counsel requires proving that (1) counsel's

performance was deficient and (2) the deficient performance prejudiced the defendant.

*State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance

occurs when counsel's performance falls below an objective standard of reasonableness.

*State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). This court presumes that

counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052,

80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251

(1995). To rebut the strong presumption that counsel's performance was effective, the

defendant bears the burden of establishing the absence of any conceivable legitimate

tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80,

No. 33136-9-III
*State v. Loutzenhiser*

320 P.3d 142 (2014). The decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

Caleb Loutzenhiser cannot surpass the first hurdle of his claim of ineffective assistance of counsel because he cannot show that his counsel's performance was deficient. Loutzenhiser's attorney may have opted to ignore the prejudicial nature of Sergeant Vigesaa's statement because of the potentially negative impact of calling the jury's attention to the testimony. The objection might even lead to disclosure of his client's reputation in the community.

Even if counsel should have objected to the statement, Kurt Vigesaa's remark unlikely impacted the jury's verdict. Vigesaa's testimony was not central to the State's case, which rested more squarely on Officer Howe's testimony, as the victim of Loutzenhiser's attempted assault, and other eyewitness to his actions. Vigesaa did not identify Caleb Loutzenhiser as one of Spokane's prolific criminals. Loutzenhiser may have conceded anyway to being a productive lawbreaker when he contended he sold drugs and fled from Officer Howe for fear that Howe might be a disenchanted purchaser.

*Issue 3: Whether the trial court erred when rendering the additional jury instruction after the jury question?*

*Answer 3: Yes, but the error was harmless.*

13

Caleb Loutzenhiser next contends that the trial court impermissibly interfered with the jury's deliberations when responding to an inquiry from the jury regarding the definition of assault. CrR 6.15(f) allows jurors to pose questions during deliberations and directs the trial court to respond to the questions. The rule also allows the trial court to give additional instructions on the law in response to a question. Our trial court responded to the juror question: "It is not necessary for the actor (defendant) to actually intend to cause bodily injury." CP at 168. Loutzenhiser contends the court's answer constituted an improper comment on the evidence. Loutzenhiser also maintains that the court's response misled the jury insofar as it created a likelihood that the jury would find Loutzenhiser guilty based on his lack of intent to commit bodily injury, without similarly finding the requisite intent to create apprehension of bodily injury. He asks this court to reverse his conviction for second degree assault and remand for a new trial on that charge.

The State claims Caleb Loutzenhiser failed to preserve this assignment of error. In the alternative, the State maintains that the impromptu jury instruction amounted to harmless error. We reject the State's first argument. A defendant may assign error to an alleged judicial comment on the evidence for the first time on appeal. *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). Regardless, Caleb Loutzenhiser objected to the trial court's rendering of the additional instruction.

Caleb Loutzenhiser's assignment of error concerning the additional jury

instruction raises two distinct questions. First, was the additional instruction a correct statement of law? Second, was the instruction a comment on the evidence? We address the conformance to law first.

Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable state law, are not misleading, and permit the defendant to argue his theory of the case. *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). A trial court can, in response to a jury query during deliberations, provide additional instructions so long as they do not amount to an improper comment on the evidence or supply incorrect law. *State v. Frandsen*, 176 Wash. 558, 563, 30 P.2d 371 (1934); *State v. Duhaime*, 29 Wn. App 842, 857, 631 P.2d 964 (1981). This court reviews alleged errors of law in jury instructions de novo. *State v. Reed*, 168 Wn. App. 553, 574, 278 P.3d 203 (2012).

While there is no statutory definition of "assault," Washington courts have framed a definition for purposes of crime that recognizes assault as:

> "(1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common law assault]."

*State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994) (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993)). In this case, the jury received an instruction employing the first and third definitions of assault. To repeat, instruction 9 read:

15

> An assault is an act, with unlawful force, *done with intent to inflict bodily injury upon another*, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
> An assault is an act, with unlawful force, *done with the intent to create in another apprehension and fear of bodily injury*, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 94 (emphasis added). Under the first paragraph, the State needed to prove intent to inflict injury. Under the second paragraph, the State needed to show intent to cause fear, but not intent to inflict injury.

Caleb Loutzenhiser argues that the trial court erred in its response to the jury's question regarding instruction 9 because the response implied that the jury could convict Loutzenhiser for the definition of assault in paragraph 1 of the instruction, even if he did not intend to inflict bodily injury. Loutzenhiser argues further that the court's response communicated to the jury that he need not intend any act in order to be convicted of second degree assault.

The trial court's response, while repetitive, correctly stated the law since the jury did not need to find that Caleb Loutzenhiser intended to cause bodily harm in order to find him guilty of second degree assault, at least under paragraph 2 of jury instruction 9. The court's response conveyed no new or affirmative information, nor presented a new theory of the case that had not been previously argued or defended against. The jury's question only concerned the second instructed definition of assault found in paragraph 2, premised on intent to cause apprehension of bodily injury, for which the jury need not

16

find Loutzenhiser actually intended to cause bodily injury. We hold that the additional instruction constituted a correct statement of law.

We now address whether the trial court's additional jury instruction commented on the evidence. Article IV, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Under this constitutional provision, any remark that suggests that the jury need not consider an element of an offense could qualify as judicial comment. *State v. Levy*, 156 Wn.2d at 721 (2006). The constitutional prohibition includes instructing a jury that matters of fact have been established as a matter of law. *Levy*, 156 Wn.2d at 721.

Although the added instruction was a correct statement of the law, the trial court commented on the evidence in the instruction. Placing the word "defendant" in parentheses next to the term "actor" suggested, if not told, the jury to conclude that the identity element of the second degree assault charge had already been proved as a matter of law. In other words, the instruction informed the jury that Caleb Loutzenhiser drove the car that nearly struck Officer Dustin Howe.

*State v. Levy*, 156 Wn.2d 709 (2006) bolsters our conclusion. In *State v. Levy*, the State alleged that Percy Levy participated in the home invasion robbery of an apartment, and that, during the robbery, Levy forced his way into the apartment with a gun, brandished the weapon at the apartment's occupants, stole cash and jewelry, and

17

threatened individuals present with a crowbar. In the jury instructions for Levy's trial for first degree burglary, first degree robbery, and unlawful possession of a firearm, the court used "to-wit" references when describing the "entered or remained unlawfully," and "deadly weapon" elements of the burglary and robbery charges. Although ultimately affirming Levy's convictions, our Supreme Court clarified that the "to-wit" references qualified as judicial comments because they suggested to the jury that an apartment was a "building" and a crowbar a "deadly weapon" as a matter of law.

We agree with the State that the jury instruction was harmless in light of Caleb Loutzenhiser's theory of the case explored during closing argument. We presume prejudice when the trial court delivers an erroneous instruction favoring the party in whose favor the jury returns a verdict. *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947). The prevailing party may rebut this presumption, however. A harmless error is an error which is trivial or merely academic and in no way affected the final outcome of the case. *Britton*, 27 Wn.2d at 341.

At trial, Caleb Loutzenhiser admitted he drove the Mazda3 on February 4, 2014. He argued he fled because he did not know the Mazda3 was stolen and did not identify Dustin Howe as a law enforcement officer. Loutzenhiser did not dispute he was the actor for purposes of the assault charge. The improper comment on the evidence did not influence the outcome of the case.

*Issue 4: Does sufficient evidence support the imposition of the restitution award?*

18

No. 33136-9-III
*State v. Loutzenhiser*

*Answer 4: We refuse to address this assignment of error because Caleb Loutzenhiser agreed to the amount before the trial court.*

We remand for resentencing resulting from the vacation of Caleb Loutzenhiser's conviction for failure to remain at the scene of an accident with an unattended vehicle. We address, nonetheless, some of Loutzenhiser's assignments of error to the sentence that bear no relation to the reversed conviction.

Caleb Loutzenhiser contends that the trial court erred in ordering restitution because evidence did not substantiate the amount ordered. The State argues that Loutzenhiser waived the issue because he failed to object below and agreed to the amount when his attorney signed the restitution schedule. Loutzenhiser agrees he did not object before the trial court. He nevertheless urges this court to review the issue under RAP 2.5(a)(2) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

Under RCW 9.94A.753:

> (3) . . . restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. . . .
> (4) . . . The portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime. The court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount. . . .
> (5) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless

19

extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

A trial court determining the amount of restitution may either rely on a defendant's admission or acknowledgment of the amount of restitution or it may determine the amount by a preponderance of evidence. *State v. Gray*, 174 Wn.2d 920, 926 n.4, 280 P.3d 1110 (2012); *State v. Hunsicker*, 129 Wn.2d 554, 558-59, 919 P.2d 79 (1996). A defendant's agreement to pay restitution waives his right to challenge the sufficiency of the evidence supporting restitution on appeal. *State v. Branch*, 129 Wn.2d 635, 651, 919 P.2d 1228 (1996). Caleb Loutzenhiser made no objection to the imposition of restitution and agreed to the restitution schedule proposed by the State via his attorney.

In order to obtain this court's review, Loutzenhiser must demonstrate that the claimed error falls into the exception to issue preservation articulated in RAP 2.5. RAP 2.5(a) provides, in relevant part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court . . . (2) failure to establish facts upon which relief can be granted.

RAP 2.5(a)(2)'s exception applies to a challenge to the factual basis for *relief* for the first time on appeal, such as facts necessary to sustain a jury verdict awarding damages, standing, or whether someone falls within the protected class of an anti-

discrimination statute. *Mitchell v. Doe*, 41 Wn. App. 846, 847-48, 706 P.2d 1100 (1985); *Gross v. City of Lynnwood*, 90 Wn.2d 395, 400, 583 P.2d 1197 (1978). The trial court did not grant the State any "relief" in imposing statutorily authorized fees and fines, nor has any case held that restitution is analogous to "relief" as the law considers the term. Thus, we reject Loutzenhiser's attempt to extend this provision of RAP 2.5 to his own appeal.

Caleb Loutzenhiser also asks us to exercise our discretion, afforded under *State v. Blazina*, 182 Wn.2d at 830 (2015), to review challenges to financial obligations imposed at sentencing without any objection by the defendant. *Blazina* is inapposite, however. Blazina addressed legal financial obligations imposed under RCW 9.94A.760 and RCW 10.01.160(1). Such financial obligations should be awarded by the trial court only if the defendant has or will have the financial ability to pay. RCW 10.01.160(3). The restitution statute, RCW 9.94A.753, contains no such condition before awarding restitution.

*Issue 5: Did the court err by setting a minimum monthly payment toward restitution and legal financial obligations, without making the requisite statutory inquiry?*

*Answer 5: No.*

Caleb Loutzenhiser next challenges the trial court's imposition of a minimum monthly payment for mandatory legal financial obligations and restitution on the grounds

that the court did not actually consider Loutzenhiser's ability to pay and instead entered a boilerplate finding of the same. This argument is a twist on the usual argument that the trial court imposed discretionary legal financial obligations without an individualized inquiry. Loutzenhiser apparently agrees that all financial obligations are mandatory. He objects to the minimum payment imposed.

Caleb Loutzenhiser argues that the court was required to take into account the entire amount of restitution owed, his past, present, and future ability to pay, and any assets before setting a minimum payment amount of $25 per month. As with his previous assignment of error, Loutzenhiser asks this court to review the issue even though it was not preserved below, strike the monthly payment set by the court, and remand for resentencing. The State contends that Loutzenhiser waived his challenge and the trial court anyway made the requisite statutory inquiry before setting a monthly payment amount. The State further argues that the mandatory legal financial obligations imposed in this case do not require any special finding even with regard to payment terms. The State is correct, and we affirm this portion of the judgment and sentence.

All three of the legal financial obligations imposed in this case, a $500 victim assessment, a $200 criminal filing fee, and a $100 DNA collection fee, are mandatory fees authorized by statute. RCW 7.68.035; RCW 36.18.020(2)(h); RCW 43.43.7541. So too is restitution. RCW 9.94A.753. Trial courts must impose such fees regardless of a defendant's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

All the authority on which Caleb Loutzenhiser relies, applies to discretionary financial obligations. He implies that this court should extend *Blazina*'s reach to mandatory fees and costs, but provides no legal argument in support of such an extension. Thus, we refuse to entertain this assignment of error.

*Issue 6: Did the trial court err by prohibiting Caleb Loutzenhiser from using or possessing marijuana or products containing THC while on community custody?*

*Answer 6: No.*

Caleb Loutzenhiser contends that the community custody condition that prohibits his use of marijuana or THC products was not authorized by statute. We agree that a trial court may only impose sentences that statutes authorize. *State v. Albright*, 144 Wn. App. 566, 568, 183 P.3d 1094 (2008). We disagree that the subject community custody condition lacked statutory authorization.

RCW 9.94A.703 controls conditions a court must or may impose on one released into community custody. Caleb Loutzenhiser argues that the condition is not authorized by statute because it is not related to the crimes of which he was convicted, nor did the trial court find that a chemical dependency contributed to the commission of the offenses. The State responds that the condition is appropriate given the trial court's remarks during sentencing about Loutzenhiser's substance abuse and because possession of marijuana is still a controlled substance federally and it cannot be used without a prescription. We only address the State's second argument.

23

No. 33136-9-III
*State v. Loutzenhiser*

RCW 9.94A.703 declares:

> When a court sentences a person to a term of community custody, the court shall impose conditions of community custody as provided in this section.
> . . . .
> (2) **Waivable conditions.** Unless waived by the court, as part of any term of community custody, the court shall order an offender to:
> . . . .
> (c) Refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions.

RCW 9.94A.703 reads:

> (3) **Discretionary conditions.** As part of any term of community custody, the court may order an offender to:
> . . . .
> (f) Comply with any crime-related prohibitions.

The community custody condition prohibiting use and possession of marijuana survives, under RCW 9.94A.703(2)(c), if marijuana is a "controlled substance," or, under RCW 9.94A.703(3)(f), if marijuana was crime-related. Since Caleb Loutzenhiser's convictions did not relate to use or possession of marijuana, we review whether marijuana is a "controlled substance."

Despite the state's legalization of use of small amounts of marijuana, marijuana remains a controlled substance, particularly in light of federal law still banning marijuana. RCW 69.50.101(d) defines a "controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state laws, or federal or commission rules." Marijuana is a Schedule I drug under the United

24

No. 33136-9-III
*State v. Loutzenhiser*

States Controlled Substance Act, 21 U.S.C. § 812. Therefore, marijuana, as a community custody condition can survive because it is a "controlled substance."

RCW 9.94A.703(2)(c) excepts, from the community custody prohibition, the use of a "controlled substance" to the extent the use is pursuant to a prescription. This exception does not control because one can never obtain a prescription for marijuana use. RCW 69.50.308. Even in the context of medical marijuana, the user obtains an "authorization," not a prescription, from a health care provider. RCW 69.51A.030(2)(a).

*Issues 7 and 8: Did the judgment and sentence and clerk certification contain scrivener's errors that should be corrected?*

*Answer 7 and 8: Yes and no.*

Caleb Loutzenhiser requests that we remand for correction of two scrivener's errors in his judgment and sentence and related documents: (1) a certificate for court administrator that incorrectly lists Loutzenhiser's sentence for failure to remain at the scene of an accident with an unattended vehicle as ninety months, rather than ninety days, and (2) the misdemeanor judgment and sentence, which does not specify that counts five and six are served concurrently with the felony convictions. The State does not address the issue.

Appellate courts have remanded solely for correction of a scrivener's error in a judgment and sentence, in order to ensure that the document "accurately reflects the sentence the trial court intended." *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360

25

No. 33136-9-III
*State v. Loutzenhiser*

(2010). We remand for correction of the misdemeanor judgment and sentence, so the document accurately reflects the trial court's ruling that Caleb Loutzenhiser's misdemeanor sentence runs concurrent with his felony sentence. Since we vacate the conviction for failure to remain at the scene of an accident with an unattended vehicle, we need not remand for correction of the court administrator's certificate. The error is now moot.

## CONCLUSION

We reverse and dismiss the conviction for failure to remain at the scene of an accident with an unattended vehicle. We affirm all other convictions. We remand for resentencing in conformity to this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

26